## MAINE BEER & WINE WHOLESALERS ASSOCIATION, et al.

### v.

## STATE of Maine.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1992.

Decided Jan. 5, 1993.

---

H. Glenn Alberich (orally), Amy J. Axelrod, Mahoney, Hawkes & Goldings, Boston, MA, John A. Graustein, Drummond, Woodsum, Plimpton & MacMahon, Peter L. Murray (orally), Barbara T. Schneider, Murray, Plumb & Murray, Portland, for plaintiffs.

Michael E. Carpenter, Atty. Gen., Lucinda E. White (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

The plaintiffs, Maine Beer & Wine Wholesalers Association, Inc., Maine Soft Drink Association and Farmington Coca–Cola Bottling and Distributing Co. (hereinafter the industry), appeal from a summary judgment in favor of the defendant, the State of Maine, entered in the Superior Court (Kennebec County, *Alexander, J.*) on their complaints against the State for declaratory and injunctive relief.[1] They contend that the court erred in determining, as a matter of law, that the amended beverage container deposit statute, 32 M.R.S.A. § 1866–A (Supp.1992), does not effect a taking of property without just compensation in violation of article I, section 21 of the Maine Constitution[2] and the fifth amendment of the United States Constitution.[3] We affirm the judgment.

Submitted on cross-motions for summary judgment, this controversy involves no disputed issues of fact. *See* M.R.Civ.P. 56(c) (Summary judgment is appropriate when the record reveals no issues of material fact and any party is entitled to a judgment as a matter of law.) The plaintiffs' sole challenge on appeal is to the court's interpretation of 32 M.R.S.A. §§ 1861–1872 (1988 & Supp.1992), *as amended,* governing the collection and disposition of beverage containers. The statute as originally enacted became effective January 1, 1978, following a favorable statewide referendum. The law's statement of legislative purpose expresses the legislature's finding

> that beverage containers are a major source of nondegradable litter and solid waste in this State and that the collection and disposal of this litter and solid waste constitutes a great financial burden for the citizens of this State.

32 M.R.S.A. § 1861(1). In addition, it reveals a legislative intent

> to create incentives for the manufacturers, distributors, dealers and consumers of beverage containers to reuse or recycle beverage containers thereby removing the blight on the landscape caused by the disposal of these containers on the highways and lands of the State and reducing the increasing costs of litter collection and municipal solid waste disposal.

*Id.* § 1861(2). As a result, the law requires that every beverage container sold, or offered for sale to consumers, have a refund value of at least five cents, *id.* § 1863, that manufacturers, distributors and retailers are required to pay to consumers on presentment of an empty beverage container. *Id.* § 1866. The mechanics of this refund system were left to the industry, which, in turn, either charged a deposit to consumers to cover the cost incurred or included the statutorily mandated refund value in its cost of doing business.

---

**1.** Maine Beer and Wine Wholesalers Association, Inc. filed its complaint in the Superior Court on August 22, 1991, challenging the constitutionality of the amendment. Maine Soft Drink Association and Farmington Coca–Cola Bottling and Distributing Co. filed their complaint on October 22, 1991, seeking declaratory and injunctive relief similarly charging that the deposit forfeiture provisions are unconstitutional. The court withheld a decision on the plaintiffs' subsequent motions for preliminary injunctions, consolidated the cases for all further purposes, and ordered expedited discovery, briefing and oral argument on cross-motions for summary judgment.

**2.** Me. Const. art. I, § 21 provides:

Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it.

**3.** U.S. Const. amend. V provides:

[N]or shall private property be taken for public use, without just compensation.

The amendment at issue, effective July 1, 1991, provides that the industry must maintain a deposit transaction account for the collection of deposits on beverage containers and payment of refund values and distribution of unclaimed deposits. P.L. 1991, ch. 591, §§ R–3 & R–4 (codified at 32 M.R.S.A. §§ 1866(7), 1866–A (Supp.1992)). It defines the minimum deposit as the property of the consumer who purchases a beverage container and declares that such deposit value is held by the industry in trust for the consumer or for the State if the deposit is abandoned by the consumer. *Id.* § R–1 (codified § 1863). Deposits are presumed unclaimed or abandoned when retained by the manufacturer or distributor 60 days after being collected within any 3–month period. *Id.* § R–4 (codified § 1866–A). On a quarterly basis, 50% of the unclaimed minimum deposits are to be remitted to the State, *id.* § R–4 (codified § 1866–A(2)), with reimbursement to the industry if returns exceed the amount credited to the deposit transaction account in any given quarter. *Id.* § R–4 (codified § 1866–A(3)).

The plaintiffs filed complaints challenging the constitutionality of the amendment. After a hearing, the court granted the State's motion for a summary judgment that the statute does not effect an unconstitutional taking of property, and the industry appeals.

 Statutory interpretation is a question for the court. *State v. Bellino*, 390 A.2d 1014, 1022 (Me.1978). We have previously stated that

> [t]he 'fundamental rule' in statutory construction is that the legislative intent as divined from the statutory language controls the interpretation of the statute. Unless the statute reveals a contrary intent, the words 'must be given their plain, common and ordinary meaning.' ... To determine legislative intent when there is an ambiguity in the statute, [however,] the court may look beyond the words themselves to the history of the

statute, the policy behind it, and contemporary related legislation.

*State v. Edward C.*, 531 A.2d 672, 673 (Me.1987) (citations omitted). Consequently, the court will give a provision's language "such meaning as may best answer the intention which the Legislators had in mind, when they enacted the statute." *Mundy v. Simmons*, 424 A.2d 135, 137 (Me.1980). All legislative enactments are presumed constitutional, and the party challenging the constitutionality of a statute bears the burden of proof. *Union Mutual Life Ins. Co. v. Emerson*, 345 A.2d 504, 507 (Me.1975). This presumption, however, is not absolute; legislation which violates an express mandate of the constitution is invalid even though it is expedient or is otherwise in the public interest. *Orono–Veazie Water Dist. v. Penobscot Cty. Water Co.*, 348 A.2d 249, 253 (Me.1975).

 Thus, we construe a statute to promote the end the legislators sought by its enactment and approve a construction which will not nullify its purpose. *Waddell v. Briggs*, 381 A.2d 1132, 1135 (Me.1978). If necessary, we may ignore the literal meaning of phrases in favor of an interpretation consistent with the legislative intent. *State v. Niles*, 585 A.2d 181, 182 (Me.1990). It is within this context that we turn to the challenged amendment.

 Private property may not be taken for public use without just compensation. U.S. Const. amend. V; Me. Const. art. I, § 21. Although both tangible and intangible property may be the subject of an impermissible taking, there is no property right to potential or future profits. *York Hosp. v. Maine Health Care Fin. Comm'n*, 719 F.Supp. 1111, 1121 (D.Me. 1989) ("Absent legal entitlement to specific profits, there can be no property interest, and thus, no taking."); *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 482 n. 10 (Me.1982) (citing *Andrus v. Allard*, 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1980)). Furthermore, an appropriation of money does not constitute a per se taking,[4] as

---

**4.** An alleged per se taking, as compared to a regulatory taking claim, requires no case specific analysis of the appropriation but is compensable "per se." *Yee v. City of Escondido*, 503

would a physical occupation of property or a denial of all its beneficial use. *United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9, 110 S.Ct. 387, 395 n. 9, 107 L.Ed.2d 290 (1989) ("It is artificial to view deductions of a percentage of a monetary award as physical appropriations of property. Unlike real or personal property, money is fungible.... Such a rule would be an extravagant extension of the [definition of per se takings]."). *Accord Wellman v. Department of Human Servs.*, 574 A.2d 879, 885 (Me.1990) ("In order for there to be a taking ... there must be a physical invasion of private property or a substantial impairment of its use and enjoyment. The concept of a taking does not apply to an overpayment of money to the state by a citizen, ... or a fine under a statute later declared to be unconstitutional." (citations omitted)).

 Enacted in response to a growing concern with increased litter due to the introduction and popularity of "no deposit, no return" containers, the bottle law is an environmental regulation that falls squarely within the State's police power to regulate for the public health and safety. *American Can Co. v. Oregon Liquor Control Comm'n*, 15 Or.App. 618, 517 P.2d 691, 698 (Or.App.1973) (citing *Huron Cement Co. v. Detroit*, 362 U.S. 440, 442, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960)). *Accord Ace Tire Co. Inc. v. Municipal Officers of Waterville*, 302 A.2d 90, 97 (Me. 1973). The refund system, as originally enacted, had as its goal the reduction of the cost to the state of collecting and disposing of nondegradable litter and solid waste. Implicit in 32 M.R.S.A. §§ 1861(1)–1861(2) is the legislature's recognition of the cost burden that disposable beverage containers impose on the State and its intention to remove that cost from the general public and place it on those who profit from the sale of the contents of the containers.

Rather than mandating industry sponsored litter pick-up, however, the legislature created an incentive system that encourages consumers to participate in container recycling. By requiring that the industry pay the minimum refund value for returned containers, the legislature expressed its clear intent that the industry remain primarily responsible for the containers. That the industry is free to charge consumers a deposit to cover the cost of its statutory duty to pay refund values does not relieve it of its primary responsibility for the disposal of used containers.

Subsequently, in recognition that the bottle law had only successfully dealt with a portion of the container litter problem, the legislature amended the law to address the disposition of the remaining litter. The amendment focuses on those used containers that disappear from the recycling continuum and may wind up on the roadside or in the State's landfills thereby inflicting a cost on the State, and the amendment makes clear that this cost is, within the purview of the original legislation, also to be borne by the industry that profits from their sale. Recognizing the likelihood that a deposit had been paid for the non-returned containers, and using the unclaimed deposits as a measure of the number of unreturned containers, the legislature made explicit provision for assessing the industry for the public cost of disposing of the unreturned containers by requiring that a percentage of the unclaimed refund values be remitted to the State. Rather than assessing the industry a packaging fee or tax, the legislature chose to depict the unclaimed refund values as the property of the consumers that had been abandoned to the State.[5]

Consequently, the industry's claim that the amendment is a physical invasion and permanent occupation of its sales proceeds and that such action constitutes a per se

U.S. ——, ——, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153, 162 (1992); *Bell v. Town of Wells,* 557 A.2d 168, 178 (Me.1989).

**5.** This analogy, although circuitous, does not render the amendment constitutionally infirm since its practical consequences produce a permissible result. *See Niles,* 585 A.2d at 182; *Tiedemann v. Johnson,* 316 A.2d 359, 364 (Me. 1974).

taking is unavailing.[6] The challenged amendment does not authorize a physical invasion or confiscation of the industry's property but merely regulates its sale of beverage containers by making it financially accountable for those containers not returned. *See Yee v. City of Escondido*, 503 U.S. ——, ——, 112 S.Ct. 1522, 1529, 118 L.Ed.2d 153, 166 (1992) (The existence of a wealth transfer does not "convert regulation into physical invasion."); *Prudential Ins. Co. of Am. v. Insurance Comm'r*, 293 A.2d 529, 537 (Me.1972).

■■■■ Nor does the amendment, though it imposes costs on the industry, represent an impermissible regulatory taking. Legislation that requires the use of one person's assets for the benefit of another does not violate due process unless it is arbitrary or irrational. *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 223, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986). Similarly, government regulation that exacts costs from private business is permissible as long as it is a reasonable use of the state's police power. *Shapiro Bros. Shoe Co. Inc. v. Lewiston–Auburn S.P.A.*, 320 A.2d 247, 255 (Me.1974). Reasonableness in the exercise of the state's police power requires that the purpose of the enactment be in the interest of the public welfare and that the methods utilized bear a rational relationship to the intended goals. *National Hearing Aid Centers, Inc. v. Smith*, 376 A.2d 456, 460 (Me.1977). Because the amendment further clarifies and implements the legislature's original goal of reducing the cost to the State of litter collection and disposal by assessing a fee on the industry for the unreturned containers, it is neither irrational nor unreasonable. *See Usury v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 18–19, 96 S.Ct. 2882, 2893–94, 49 L.Ed.2d 752 (1976) (regulation may be irrational in the absence of any connection between the regulated conduct and the public detriment).

Contrary to the industry's claim, the record discloses no evidence that the amendment imposes a severe economic burden on the industry, or that the industry has a legitimate investment expectation in the *status quo*.[7] *See Connolly*, 475 U.S. at 227, 106 S.Ct. at 1027 ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.") (*quoting FHA v. The Darlington, Inc.*, 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958)).

■■■■ Nor do we find merit in the industry's contention that the required remittance to the State of 50% of the unclaimed deposit values does not comport with accepted principles of abandoned property law. The industry argues that the State's right to the deposits is derivative of those of the consumer and is conditioned on the presentment of the container. Although the reference in the amendment to "abandoned deposits" may be a misnomer, the required remittance to the state of the equivalent of 50% of the minimum refund value on unreturned containers arises precisely because the containers are not returned. The entire thrust of the amendment is to provide a mechanism for the State to recover the cost of disposing of unreturned containers, thereby more fully implementing the purpose of the original statute enacted in 1978.

The entry is:

Judgment affirmed.

All concurring.

---

**6.** The industry's reliance on *Webb's Fabulous Pharmacies Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), is misplaced. In *Webb's*, the Court invalidated the appropriation of interest on funds deposited with the court as an excessive fee for the court's services: a regulatory taking, not a per se taking. 449 U.S. at 163, 101 S.Ct. at 451–52.

**7.** Because this is a facial challenge to the amendment, we are not presented with a case specific factual inquiry.