MICHIGAN SOFT DRINK ASSOCIATION v DEPARTMENT OF
TREASURY

Docket Nos. 141168, 141586. Submitted December 20, 1993, at Detroit.
Decided August 1, 1994, at 9:35 A.M. Leave to appeal sought.

The Michigan Soft Drink Association brought an action in the
Ingham Circuit Court against the Department of Treasury,
seeking a declaration that the unclaimed deposit amendments
of the act regarding beverage containers (the Bottle Law), 1989
PA 148, MCL 445.573b; MSA 18.1206(13b) and MCL 445.573d;
MSA 18.1206(13d), are unconstitutional as a taking without just
compensation of private property belonging to the plaintiff's
members. The plaintiff also sought a permanent injunction
against enforcement of the amendments. Several retail mer-
chants were allowed to intervene to challenge the plaintiff's
standing to bring the action and to oppose the plaintiff's motion
for partial summary disposition. The court, Thomas L. Brown,
J., found that the plaintiffs had standing to bring the action
and entered partial summary disposition for the plaintiffs,
finding that the unclaimed deposit amendments were unconsti-
tutional under US Const, Ams V and XIV, and Const 1963, art
10, § 2. The court therefore entered the permanent injunction
requested by the plaintiffs. The defendant and the intervening
defendants filed separate appeals. The appeals were consoli-
dated.

The Court of Appeals *held*:

The trial court properly found that the plaintiffs had stand-
ing to bring the action, but erred in finding the unclaimed

REFERENCES

Am Jur 2d, Constitutional Law §§ 189, 219, 580-584, 590, 591, 600;
Eminent Domain §§ 73, 80, 150, 157, 173; Parties §§ 31, 33.

Supreme Court's views as to what constitutes "taking," within
meaning of Fifth Amendment's prohibition against taking of
private property for public use without just compensation. 89 L
Ed 2d 977.

Supreme Court's views as to what constitutes "private property"
within meaning of prohibition, under Federal Constitution's Fifth
Amendment, against taking of private property for public use
without just compensation. 91 L Ed 2d 582.

deposit amendments to be unconstitutional and in entering the permanent injunction.

1. The plaintiff has standing pursuant to MCR 2.201(B)(4), because the purposes for which it exists qualify as protective or improvement purposes and because it seeks to test the constitutionality of a statute relating to an allegedly illegal expenditure of state funds. The plaintiff's interest in this matter differs from the interest of the citizenry at large.

2. When the Legislature amended the Bottle Law, the Initiated Law of 1976, MCL 445.571 *et seq.*, MSA 18.1206(11) *et seq.*, by enacting 1989 PA 148, which contained the unclaimed deposit amendments, the manufacturers and distributors no longer had a private property interest in the retention of prospective unredeemed bottle deposits. Therefore, the plaintiff cannot demonstrate a cognizable interest in affected private property and cannot prevail in its claims pertaining to the takings clauses. The amendments did not effect a taking because the plaintiff's members possessed no right to the deposits under the amended act. Any property rights of the plaintiff's members that arose from the original act were subject to amendment. The Legislature had the authority to settle the question of ownership of the unrefunded deposits by adopting 1989 PA 148.

3. In the alternative, even assuming that the plaintiff's members have some property interest in future unclaimed deposits, the regulatory action involved here is not a permanent physical occupation of property that amounts to a taking per se. The governmental regulation of property here did not constitute a taking. Because the prospective amendments are rationally related to the general welfare, an alteration of the plaintiff's expectations is appropriate. A state may exact costs from private business as a reasonable use of police powers.

Reversed and remanded.

1. CONSTITUTIONAL LAW — BOTTLE LAW — UNCLAIMED DEPOSITS.

The unclaimed deposit amendments of the bottle law do not offend the takings clauses of the federal or state constitutions (US Const, Ams V, XIV; Const 1963, art 10, § 2; 1989 PA 148, MCL 455.573b, 455.573d; MSA 18.1206[13b], 18.1206[13d]).

2. PARTIES — STANDING.

Standing denotes a party's interest in the outcome of litigation that ensures sincere and vigorous advocacy; standing requires a demonstration that a substantial interest of the plaintiff will be affected detrimentally in a manner different from the interests of the citizenry at large.

3. Actions — Parties — Standing.

A domestic nonprofit corporation organized for civic, protective, or improvement purposes has standing to bring an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure (MCR 2.201[B][4]).

4. Constitutional Law — Private Property — Taken for Public Use.

The federal and state constitutions protect private property from being taken for public use without just compensation; to prevail on a takings claim, a claimant first must demonstrate a cognizable interest in the affected private property (US Const, Ams V, XIV; Const 1963, art 10, § 2).

5. Constitutional Law — Private Property — Statutes.

Property rights that arise from a statutory scheme are subject to amendment and may be taken away prospectively by amendment without violating the constitutional prohibition against taking private property without just compensation (US Const, Ams V, XIV; Const 1963, art 10, § 2).

6. Constitutional Law — Police Powers — Property — Taken for Public Use — Money.

Although both tangible and intangible property may be the subject of an impermissible taking for public use, there is no property right to potential or future profits; absent legal entitlement to specific profits, there can be no property interest and thus no taking without just compensation; an appropriation of money does not constitute a taking per se, as would a physical occupation of property or a denial of all its beneficial use.

7. Constitutional Law — Private Property — Taken for Public Use.

Three factors should be considered in identifying a taking forbidden by the taking clause: the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the governmental action (US Const, Ams V and XIV).

*Dykema Gossett* (by *William J. Perrone, Richard D. McLellan,* and *Ronald J. Torbert*), and *Tom Downs,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, and *Clive D. Gemmill* and *Thomas R. Wheeker,* Assistant Attorneys General, for the Department of Treasury.

*Bellanca, Beattie & De Lisle, P.C.* (by *James C. Zeman* and *James V. Bellanca, Jr.*), for Associated Food Dealers of Michigan and others, intervening defendants.

Amici Curiae:

Michigan United Conservation Clubs, and others (by *M. Carol Bambery*).

Before: SAWYER, P.J., and CORRIGAN and HOOD, JJ.

CORRIGAN, J. In this case of first impression, we hold that the unclaimed deposit amendments of the act regarding beverage containers (hereafter referred to as the Bottle Law), 1989 PA 148, MCL 445.573b; MSA 18.1206(13b) and MCL 445.573d; MSA 18.1206(13d), do not offend the takings clauses of US Const, Ams V and XIV, and Const 1963, art 10, § 2. Because these amendments constitute a valid exercise of legislative power, we order dissolution of the trial court's permanent injunction against enforcement of 1989 PA 148.

Plaintiff Michigan Soft Drink Association (MSDA), whose members consist of Michigan manufacturers and distributors of carbonated beverages, challenged the constitutionality of 1989 PA 148 as a taking of MSDA members' private property without just compensation. By stipulation of the parties, several retail merchants intervened to challenge plaintiff's standing and to oppose plaintiff's motion for partial summary disposition.

The circuit court first ruled that plaintiff had standing. Regarding plaintiff's motion for partial

summary disposition, the court held that MCL 445.573b; MSA 18.1206(13b) and MCL 445.573d; MSA 18.1206(13d), which prospectively impose duties on manufacturers and distributors annually to report bottle deposits collected and refunds paid, and to pay unrefunded deposits to the Department of Treasury, effect an unlawful taking of private property for public use without just compensation, in violation of US Const, Ams V and XIV, and Const 1963, art 10, § 2. The court permanently enjoined enforcement of 1989 PA 148, MCL 445.573a; MSA 18.1206(13a) and MCL 445.573c; MSA 18.1206(13c). Defendants appealed, their appeals were consolidated, and we reverse.

I

STATUTORY SCHEME

The concerns of Michigan's citizens about environmental damage and financial burdens caused by discarded beverage containers led the people to approve the Initiated Law of 1976, MCL 445.571 *et seq.*; MSA 18.1206(11) *et seq.*, commonly known as the Bottle Law, which was effective December 3, 1978. The parties essentially agree on the mechanics of the Bottle Law's operation. The law prohibits dealers from selling to consumers beverages in nonreturnable containers for any off-premises consumption of beer and soft drinks,[1] MCL 445.572(1); MSA 18.1206(12)(1). A purchaser must pay at least a ten-cent deposit on a returnable container. MCL 445.571(d); MSA 18.1206(11)(d). In turn, a dealer must pay a refund value of at least ten cents to a

---

[1] MCL 445.571(g); MSA 18.1206(11)(g) defines a dealer as anyone who sells beverages in beverage containers to consumers. Subsection b of that section defines a beverage container as an airtight metal, glass, paper, or plastic container, or a container composed of a combination of these materials, which, at the time of sale, contains one gallon or less of a beverage.

purchaser who returns an empty container of the same size, kind, and brand of beverage that the dealer sells. *Id.*; MCL 445.572(4); MSA 18.1206(12) (4). The dealer may then present the empty container to any manufacturer or distributor who sells the same size, kind, and brand of container; a distributor or manufacturer must accept the empty container and pay its full refund value. MCL 445.572(6); MSA 18.1206(12)(6). A manufacturer or distributor may originate a deposit on any beverage container it sells. MCL 445.572(11); MSA 18.1206(12)(11).

After the voters approved the Initiated Law of 1976, manufacturers and dealers originated deposits on returnable beverage containers in anticipation of their duty to pay the refund value to dealers. Because consumers did not return all containers for their refund value, unredeemed deposits in an unknown amount began to accumulate.[2] The 1976 legislation was silent about the ownership of these unredeemed deposits. In the absence of any explicit legislative directive, manufacturers and distributors kept all the unredeemed deposits.

The Attorney General opined that unclaimed deposits were not subject to escheat under the Initiated Law of 1976, that the deposits belonged to the collectors of those deposits, and that the containers belonged to the purchasers. The Attorney General also concluded, however, that appropriate legislation could render unclaimed deposits subject to escheat. OAG 1989-1990, No 6578, pp 84-89 (April 25, 1989).

[2] The amount of unredeemed deposits is unknown on this record. Plaintiff did not disclose the actual amount. A recent study estimates that the annual income from unclaimed deposits is between $26 million and $121 million a year. Webster & Pratt, *Unclaimed Beverage Container Deposits: An Update,* Michigan Commentary (Public Sector Consultants, Inc, June 29, 1988).

In deciding this case, the circuit court acknowledged that the current deposit structure would not exist in the absence of state action and that the 1976 law imposed an artificial value on empty returnable containers. The court recognized that the advent of new product technology in the form of cheap nonreturnable containers had rendered obsolete the former practice of some beverage container manufacturers of charging deposits on returnable bottles. Were it not for the Bottle Law, manufacturers and distributors would not charge deposits on nonreturnable containers equal to their statutory refund value.

Because of public sentiment against windfall profits to distributors and manufacturers from the unredeemed deposits, the Legislature explicitly amended the Bottle Law to provide that unclaimed deposits on returnable containers are considered the property of the purchaser, not the manufacturer or distributor, 1989 PA 148, MCL 445.573d; MSA 18.1206(13d). Further, distributors or manufacturers are to report annually to the Department of Treasury the total dollar amounts of deposits collected and refunds paid. If a distributor's or manufacturer's total annual deposits exceed the total annual value of refunds, the excess must be remitted to the Department of Treasury for deposit in a revolving fund, MCL 445.573b; MSA 18.1206(13b). The Department of Treasury is to disburse annually seventy-five percent of the unredeemed bottle fund to the Unclaimed Bottle Fund. The remaining twenty-five percent is to be apportioned to dealers on the basis of the percentage of empty returnable containers each dealer handles. See MCL 445.573c; MSA 18.1206(13c).

1989 PA 148 was made contingent upon the enactment of what later became 1989 PA 157, which directed utilization of the Unclaimed Bottle

Fund for specified environmental and public pur-
poses, MCL 299.609a *et seq.*; MSA 13.32(9a) *et seq.*
For the first ten years, the unclaimed deposits will
remain in the Unclaimed Bottle Fund. Thereafter,
the Department of Treasury will disburse one-
third of the proceeds to the Environmental Re-
sponse Fund, one-third to the Long-Term Mainte-
nance Trust Fund, and one-third to the Clean
Michigan Fund, MCL 299.609; MSA 13.32(9), MCL
299.609c; MSA 13.32(9c), MCL 299.375; MSA
13.33(5).

## II

### PLAINTIFF'S STANDING TO SUE

Defendants first contend that plaintiff lacks
standing to sue because it has failed to demon-
strate any direct economic injury from the un-
claimed deposits amendments. We affirm the cir-
cuit court's ruling that plaintiff has standing to
bring this action. Standing denotes "a party's in-
terest in the outcome of litigation that ensures
sincere and vigorous advocacy." *House Speaker v
Governor,* 443 Mich 560, 572; 506 NW2d 190
(1993); *Taylor v Blue Cross & Blue Shield of Michi-
gan,* 205 Mich App 644; 517 NW2d 864 (1994).
Evidence of a commitment to engage in litigation
alone, however, is insufficient to confer standing.
*House Speaker v State Administrative Bd,* 441
Mich 547, 554; 495 NW2d 539 (1993). "Standing
requires a demonstration that the plaintiff's sub-
stantial interest will be detrimentally affected in a
manner different from the citizenry at large." *Id.*
Defendants contend that the lack of direct eco-
nomic injury to plaintiff defeats standing, citing
*California Bankers Ass'n v Shultz,* 416 US 21; 94 S
Ct 1494; 39 L Ed 2d 812 (1974). Although this
argument certainly has persuasive force under

relevant federal standards, Michigan does not always subscribe to federal authority on standing questions. *House Speaker v Governor, supra.* Instead, plaintiff has standing pursuant to MCR 2.201(B)(4), which provides in part:

> An action to prevent illegal expenditure of state funds *or to test the constitutionality of a statute relating to such an expenditure may be brought:*
> (a) in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes . . . . [Emphasis added.]

Plaintiff, a domestic nonprofit Michigan corporation, exists to promote the strength and well-being of the Michigan soft drink industry and to influence legislation and public policies affecting the soft drink industry. These purposes qualify as protective or improvement purposes. 1989 PA 148 not only directs the collection and retention of unredeemed deposits, it also directs expenditure of those deposits in subsequent years, MCL 445.573c; MSA 18.1206(13c); 1989 PA 157, MCL 299.609a; MSA 13.32(9a). Accepting, as we must, the truth of plaintiff's allegation in the complaint that the statutory scheme would effect an illegal taking, we conclude that plaintiff has standing to litigate this matter because it seeks to test the constitutionality of a statute relating to an allegedly illegal expenditure of state funds. *House Speaker v Governor, supra.*

Defendants rely principally on *Michigan License Beverage Ass'n v Behnan Hall, Inc,* 82 Mich App 319; 266 NW2d 808 (1978), to defeat plaintiff's standing to sue. In *License Beverage,* the association's stated purpose was to educate its members, licensees under the Liquor Control Act, regarding their moral, ethical, and civic responsibilities. *Id.* at 325, n 3. The organization sought injunctive

relief to enforce provisions of the Liquor Control Act. *Id.* at 323-324. This Court held that the association lacked standing because it was not constituted for representative purposes and its corporate purposes were unrelated to litigation purposes. *Id.* at 325-326. By contrast, the complaint in this case specifically alleges that plaintiff exists to represent the rights and interests of its members. Plaintiff's interest obviously differs from the interest of the citizenry at large. In light of MCR 2.201(B)(4) and *House Speaker v Governor, supra,* we conclude that the circuit court properly found that plaintiff has standing to pursue this litigation.

### III

#### TAKINGS CLAUSE

Defendants contend that the circuit court erred in holding that the unclaimed deposits amendments of the Bottle Law, 1989 PA 148, MCL 445.573b; MSA 18.1206(13b) and MCL 445.573d; MSA 18.1206(13d), violate the takings clauses of the federal and state constitutions. They argue that, after the Legislature declared that unredeemed deposits belong to the purchasers, manufacturers and distributors have no private property interest in the retention of prospective unredeemed bottle deposits. We agree.

We begin from the premise that legislative enactments are presumed constitutional, absent a clear showing to the contrary. The party challenging the constitutionality of legislation bears the burden of proof. *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400; 488 NW2d 182 (1992). Both Const 1963, art 10, § 2 and the Fifth Amendment protect private property from being taken for public use without just compensation. US Const, Ams V and XIV; Const 1963, art 10, § 2; *Penn Central*

*Transportation Co v New York City,* 438 US 104, 122; 98 S Ct 2646; 57 L Ed 2d 631 (1978); *Lansing v Edward Rose Realty, Inc,* 442 Mich 626, 631; 502 NW2d 638 (1993). In order to prevail on a takings claim, a claimant first must demonstrate a cognizable interest in the affected private property. See *Charles Murphy, MD, PC v Detroit,* 201 Mich App 54; 506 NW2d 5 (1993); *Ohio Student Loan Comm v Cavazos,* 900 F2d 894, 898-899 (CA 6, 1990). Plaintiff has failed in this burden. It has not demonstrated a property interest in its members' retention of future unredeemed deposits.

After the circuit court had already rendered its opinion in this case, the supreme courts of Massachusetts and Maine upheld the constitutionality of similar amendments of their states' bottle laws against takings clause challenges brought by wholesalers' associations in their states. *Massachusetts Wholesalers of Malt Beverages, Inc v Commonwealth,* 414 Mass 411; 609 NE2d 67 (1993) (*Mass Wholesalers II*); *Maine Beer & Wine Wholesalers Ass'n v Maine,* 619 A2d 94 (Me, 1993). Massachusetts originally enacted a bottle law analogous to the Initiated Law of 1976, Mass Gen, L ch 94, §§ 321-327. Its law did not address the problem of unclaimed deposits. The supreme court ruled that unclaimed bottle deposits belonged to the manufacturers and distributors, in the absence of an explicit legislative directive. *Massachusetts Wholesalers of Malt Beverages, Inc v Attorney General,* 409 Mass 336; 567 NE2d 183 (1991) (*Mass Wholesalers I*). The Massachusetts legislature thereafter amended its bottle law to require the maintenance of separate accounts for the benefit of consumers and the commonwealth, providing specifically that "for no purposes are amounts in such fund to be regarded as income of said bottlers or distributors." Mass Gen, L ch 94, § 323(h).

Just as in this case, Massachusetts wholesalers again filed suit, asserting that Mass Gen, L ch 94, § 323(h) effected a taking without just compensation. *Mass Wholesalers II, supra.* The supreme court rejected this argument, holding that the amendment did not effect a taking because the plaintiffs possessed no right to the deposits under the amended bill. *Mass Wholesalers II, supra,* 609 NE2d 69. The court reasoned that any rights arose from the original statutory scheme, and those rights were subject to amendment. The court rejected the wholesalers' claims of a continuing common-law right to the deposits, and found any preexisting rights the wholesalers enjoyed derived from statute. Before the enactment of the bottle law, the wholesalers had not charged deposits on these containers. After enactment, the only deposits charged equaled the statutory refund value:

> The plaintiffs' right to the deposits created under the original bottle bill, as interpreted in *Mass Wholesalers, supra,* does not translate into a similar right to these deposits under the bottle bill, as now amended. "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Regents of State Colleges v Roth,* 408 US 564, 577; 92 S Ct 2701, 2709; 33 L Ed 2d 548 (1972). *German v Commonwealth* [410 Mass 445, 450; 574 NE2d 336 (1991)]. What the Legislature granted in the original bottle bill, the Legislature can take away by amendment. [609 NE2d 70.]

We find the analysis in *Mass Wholesaler II* persuasive. See, also, *Webb's Fabulous Pharmacies, Inc v Beckwith,* 449 US 155, 161; 101 S Ct 446; 66 L Ed 2d 358 (1980); *Verbison v Auto Club Ins Ass'n,* 201 Mich App 635, 639; 506 NW2d 920

(1993) (property interests are not created by the constitution, but are defined by rules or understandings from independent sources, such as state laws).

We reject plaintiff's argument that the common law of sale and return contracts establishes that the deposits are its property, in reliance on *Goebel Brewing Co v State Bd of Tax Administration,* 306 Mich 222; 10 NW2d 835 (1943). The deposit scheme reviewed in *Goebel* was not a creature of the Legislature. *Id.* Unlike *Goebel,* but like the transactions at issue in *Massachusetts Wholesalers, supra,* the deposit transactions in the instant case occur artificially, as a result of state mandate. Although the Bottle Law does not mandate that manufacturers and distributors originate deposits, the law makes such an event inevitable. MCL 445.572(6); MSA 18.1206(12)(6) and MCL 445.572(12); MSA 18.1206(12)(12). Plaintiff essentially concedes this point; its members charge a deposit in recognition of their obligation to pay the refund value. Absent the statutory refund scheme, the manufacturers and distributors would not charge deposits on containers.

Plaintiff does not contend that its members charged deposits before the approval of the Initiated Law of 1976. Because the deposit system is a creature of the Legislature, the Legislature may define its dimensions. Nor does plaintiff argue or provide authority that the Legislature is barred from altering the conceptions of property derived from the common law. The Legislature had authority to settle the question of ownership by its adoption of the 1989 amendments. As *Mass Wholesalers II, supra,* 609 NE2d 73 observed:

"As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is

clear that a State, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Standard Oil Co v New Jersey,* 341 US 428, 435-436; 71 S Ct 822, 827; 95 L Ed 1078 (1951). The abandoned property scheme set up in the amendment is proper.

The Maine Supreme Court has also upheld amendments of its bottle law analogous to 1989 PA 148 against state and federal takings clause challenges. Employing a somewhat different analysis, that court concluded that amendments requiring sellers to remit fifty percent of unclaimed deposits to the state amounted to a valid environmental regulation falling squarely within the state's police powers. *Maine Beer & Wine Wholesalers v Maine, supra.* In the alternative, even assuming that plaintiff's members have some property interest in future unclaimed deposits, we adopt the analysis of the Maine Supreme Court:

> Although both tangible and intangible property may be the subject of an impermissible taking, there is no property right to potential or future profits. *York Hosp v Maine Health Care Fin Comm'n,* 719 F Supp 1111, 1121 (D Me, 1989) ("Absent legal entitlement to specific profits, there can be no property interest, and thus, no taking."); *Seven Islands Land Co v Maine Land Use Regulation Comm'n,* 450 A2d 475, 482, n 10 (ME, 1982) (citing *Andrus v Allard,* 444 US 51, 66; 100 S Ct 318, 327; 62 L Ed 2d 210 [1980]). Furthermore, an appropriation of money does not constitute a per se taking, as would a physical occupation of property or a denial of all its beneficial use. *United States v Sperry Corp,* 493 US 52, 62, n 9; 110 S Ct 387, 395, n 9; 107 L Ed 2d 290 (1989) ("It is artificial to view deductions of a percentage of a monetary award as physical appropriations of property. Unlike real or personal property, money

is fungible. . . . Such a rule would be an extravagant extension of the [definition of per se takings].") *Accord Wellman v Department of Human Servs,* 574 A2d 879, 885 (ME, 1990) ("In order for there to be a taking . . . there must be a physical invasion of private property or a substantial impairment of its use and enjoyment. The concept of a taking does not apply to an overpayment of money to the state by a citizen, . . . or a fine under a statute later declared to be unconstitutional." [citations omitted]). [619 A2d 97-98.]

The Maine court recognized that its bottle law fell squarely within the police powers. It observed that the amendments intended to place cost burdens posed by disposable containers on the industry, rather than the public. The court opined that the Maine legislature intended that the cost of unreturned containers must be borne by the industry that profits from their sale. The court rejected the bottlers' claim of a taking per se:

> The challenged amendment does not authorize a physical invasion or confiscation of the industry's property but merely regulates its sale of beverage containers by making it financially accountable for those containers not returned. *See Yee v City of Escondido,* 503 US —, —; 112 S Ct 1522, 1529; 118 L Ed 2d 153, 166 (1992) (The existence of a wealth transfer does not "convert regulation into physical invasion."); *Prudential Ins Co of Am v Insurance Comm'r,* 293 A2d 529, 537 (Me, 1972). [619 A2d 99].

The regulatory action involved here is not a permanent physical occupation of property that amounts to a taking per se. *Loretto v Teleprompter Manhattan CATV Corp,* 458 US 419; 102 S Ct 3164; 73 L Ed 2d 868 (1982); *Electro-Tech, Inc v Campbell Co,* 433 Mich 57, 69, n 13; 445 NW2d 61 (1989). Accordingly, a less stringent takings analy-

sis is appropriate. In evaluating whether governmental regulation of property constitutes a taking, we make an ad hoc factual inquiry into the circumstances of each case. *Connolly v Pension Benefit Guaranty Corp*, 475 US 211, 224-225; 106 S Ct 1018; 89 L Ed 2d 166 (1986):

> To aid in this determination, however, we have identified three factors which have "particular significance": (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation had interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Penn Central Transportation Co*, 438 US 104, 124; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

Applying the *Penn Central* factors, the economic impact of the regulatory taking on plaintiff is nonexistent. The economic impact on plaintiff's members is unknown on this record. Plaintiff has not attempted to identify a legitimate, investment-backed expectation in future profits from unclaimed deposits.[3] Finally, the character of the governmental action is not a permanent, physical occupation of property by the government. The amended act is prospective; plaintiff has not identified a concrete taking of any particular deposit. Because the prospective amendments are rationally related to the general welfare, an alteration of plaintiff's expectations is appropriate. *Blue Cross & Blue Shield of Michigan v Baerwaldt*, 593 F Supp 39, 42 (WD Mich, 1984). A state may exact costs from private business as a reasonable use of police powers. We conclude that the amendments satisfy the *Penn Central* test, and plaintiff has

---

[3] In discovery, plaintiff responded that a question framed on this subject was vague, ambiguous, and irrelevant. It claimed it did not understand the question.

failed to satisfy its burden of proving the invalidity of the amendments under the takings clauses.

We need not decide defendants' remaining issues because our disposition renders those issues moot.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.