CAMPS NEWFOUND/OWATONNA, INC.

v.

TOWN OF HARRISON et al.

Supreme Judicial Court of Maine.

Argued Oct. 31, 1994.
Decided March 7, 1995.

William H. Dale, Emily A. Bloch (orally), Jensen, Baird, Gardner & Henry, Portland, for plaintiff.

William L. Plouffe (orally), Drummond, Woodsum, Plimpton & MacMahon, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

The Town of Harrison[1] appeals from a summary judgment (Cumberland County, *Lipez, J.*) in favor of Camps Newfound/Owatonna, Inc., a Maine nonprofit corporation, declaring that Maine's property tax exemption statute, 36 M.R.S.A. § 652(1)(A)(1) (Supp. 1994), violates the Commerce Clause of the United States Constitution. Camps cross appeals the court's denial of its constitutional challenge based upon the Privileges and Immunities Clause of the United States Constitution and the Equal Protection Clauses of the United States and Maine Constitutions. Because we find the statute constitutional, we vacate the judgment and remand for entry of a summary judgment for the Town.[2]

Camps operates a summer camp in Harrison for children of the Christian Science faith. In April 1992, by a letter to the Harrison Board of Assessors,[3] Camps demanded a tax refund for 1989 through 1991 and a continuing tax exemption pursuant to Maine's charitable tax exemption statute, 36 M.R.S.A. § 652(1)(A)(1) (Supp.1994). The statute denies property tax exemptions, otherwise available, to nonprofit institutions that are "in fact conducted or operated principally for persons who are not residents of Maine and [make] charges that result in an average weekly rate per person ... in excess of $30."[4] Between 1989 and 1992, approximately 95% of the campers were out-of-state residents, most of whom paid weekly fees ranging from $370 to $445. Following the refusal of the Board of Assessors to grant the exemption in June 1992, Camps filed its complaint in the Superior Court challenging the board's decision and in April 1993 moved for a summary judgment on its constitutional claims.

1. The defendants are the Town of Harrison, the five individuals who serve as the Town's assessors, and the individual who serves as the Town's tax collector. The State intervened as a party defendant and filed a cross-motion for a summary judgment in the Superior Court, but did not appeal.

2. Additionally, Camps appeals the Superior Court's (Cumberland County, *Perkins, J.*) dismissal of count II of its complaint setting forth its claim for relief pursuant to 42 U.S.C. §§ 1983 and 1988. The Town and its representatives also brought a summary judgment motion arguing that Camps' constitutional claims were barred by *res judicata,* waiver, and/or collateral estoppel; the Superior Court (Cumberland County, *Lipez, J.*) denied this motion, and the Town appeals. Because we find the exemption statute constitutional in all respects, it is not necessary to discuss these other issues raised by the parties.

3. In *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 604 A.2d 908 (Me.1992), we denied Camps' appeal of a partial tax abatement for 1989 granted by the Harrison Board of Assessors. Camps' 1989 abatement application and subsequent appeals were based on the alleged overvaluation of Camps' property and, specifically, the assessor's failure to adjust the valuation to

reflect the existence of a 25–year conservation easement that Camps had placed on the property. Camps did not assert any constitutional challenges.

4. 36 M.R.S.A. § 652(1)(A)(1) (Supp.1994) provides:

Any such institution which is in fact conducted or operated principally for the benefit of persons who are not residents of Maine is entitled to exemption not to exceed $50,000.00 of current just value only when the total amount of any stipends or charges which it makes or takes during any tax year, as defined by section 502, for its services, benefits or advantages during the same tax year does not result in an average rate in excess of 30.00 per week ... No such institution which is in fact conducted or operated principally for the benefit of persons who are not residents of Maine and makes charges which result in an average weekly rate per person, as computed under the subparagraph, in excess of $30.00 may be entitled to tax exemption. This subparagraph does not apply to institutions incorporated as nonprofit corporations for the sole purpose of conducting medical research.

### Standards

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party "is entitled to a judgment as a matter of law." M.R.Civ.P. 56(c). We review the evidence before the Court in the light most favorable to the party against whom the judgment was granted to determine if the trial court committed an error of law. *Dube v. Homeowners Assistance Corp.,* 628 A.2d 1040, 1041 (Me.1993). "All legislative enactments are presumed constitutional, and the party challenging the constitutionality of a statute bears the burden of proof. This presumption, however, is not absolute; legislation which violates an express mandate of the constitution is invalid even though it is expedient or is otherwise in the public interest." *Maine Beer & Wine Wholesalers v. State,* 619 A.2d 94, 97 (Me. 1993) (citations omitted); *see also Spiller v. State,* 627 A.2d 513, 515 (Me.1993). "[S]tatutes ... will be construed, where possible, to preserve their constitutionality [and the] ... party attacking the constitutionality of a state statute ... carries a heavy burden of persuasion." *Maine Milk Producers v. Commissioner of Agric.,* 483 A.2d 1213, 1218 (Me. 1984) (citations omitted); *see Eastler v. State Tax Assessor,* 499 A.2d 921, 925 (Me.1985). A statute's unconstitutionality "must be established to such a degree of certainty as to leave no room for reasonable doubt." *Orono–Veazie Water Dist. v. Penobscot City Water Co.,* 348 A.2d 249, 253 (Me.1975); *e.g., Small v. Gartley,* 363 A.2d 724, 732 (Me. 1976).

### Commerce Clause

■ The Commerce Clause by its terms grants authority to Congress to "regulate Commerce ... among the several States." U.S. Constitution, Art. I, § 8, cl. 3. It has long been interpreted to forbid the States from discriminating against interstate trade. *Associated Indus. of Missouri v. Lohman,* —— U.S. ——, ——–——, 114 S.Ct. 1815, 1819–22, 128 L.Ed.2d 639 (1994). This prohibition is often referred to as the "dormant" or "negative" Commerce Clause. The Superior Court found that the exemption statute

violates this dormant Commerce Clause. We disagree.

Tax exemptions are characterized in Maine's tax statutes as "tax expenditures." 36 M.R.S.A. § 196 (1990). The exemption statute does not impose a tax; it exempts nonprofit corporations that choose to meet certain standards from a tax that all other taxpayers must pay. In effect, the Legislature has decided to expend tax dollars, via an exemption, to "purchase" charitable services from nonprofit organizations.

The United States Supreme Court has adopted a "two-tiered approach to analyzing state economic regulation under the Commerce Clause." *Aseptic Packaging Council v. State,* 637 A.2d 457, 461 (Me.1994) (quoting *Brown–Forman Distillers v. N.Y. Liquor Auth.,* 476 U.S. 573, 578–79, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986)). The first tier is a "per se rule of invalidity" and the second is a "flexible approach." Under the "per se rule of invalidity" approach, "[w]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [courts] have generally struck down the statute without further inquiry." *Id.* This approach "applies 'not only to laws motivated solely by a desire to protect local industries from out-of-state competition, but also to laws that respond to legitimate local concerns by discriminating arbitrarily against interstate trade.'" *Aseptic Packaging Council,* 637 A.2d at 461 (quoting *Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 344 n. 6, 112 S.Ct. 2009, 2015 n. 6, 119 L.Ed.2d 121 (1992), itself quoting *Maine v. Taylor,* 477 U.S. 131, 148 n. 19, 106 S.Ct. 2440, 2453 n. 19, 91 L.Ed.2d 110 (1986)).

The Court has adopted a "flexible approach" when the statute "has only indirect effects on interstate commerce and regulates evenhandedly." *Brown–Forman,* 476 U.S. at 579, 106 S.Ct. at 2084. In those circumstances, the Court examines "whether the state's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id.* The Supreme Court has recently stated that "this lesser scrutiny is only available 'where other legis-

lative objectives are credibly advanced *and* there is *no* patent discrimination against interstate trade.'" *Chemical Waste*, 504 U.S. at —— n. 5, 112 S.Ct. at 2014 n. 5.

Our first step is to determine whether to apply the rule of per se invalidity or to adopt the flexible approach. In order to do so we must decide whether the exemption statute regulates evenhandedly with only incidental effects on interstate commerce or whether, in fact, it does discriminate against interstate commerce. "Discrimination" refers to different treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Oregon Waste Sys. v. Department of Envtl. Quality*, —— U.S. ——, ——, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994).

■ The exemption statute does not favor in-state camps over out-of-state competitors. Rather, it favors, among in-state camps, those that serve a majority of in-state campers. The case before us demonstrates this point. Camps is a Maine corporation, and no out-of-state competitor complains that the statute favors in-state camps at its expense. Moreover, the exemption statute is not directed at taxes on the persons served by the charity but, rather, on real property taxes for which the charity would otherwise be liable. The exemption statute treats all Maine charities alike. They all have the opportunity to qualify for an exemption by choosing to dispense the majority of their charity locally. If there is any impact on interstate commerce it is incidental; it is not the purpose of the exemption statute to affect the number of out-of-state campers attending summer camps within Maine. Because the exemption statute regulates evenhandedly with only incidental effects on interstate commerce, we apply the flexible approach, examining whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Brown–Forman*, 476 U.S. at 580, 106 S.Ct. at 2084.

The purpose of any tax exemption for charitable institutions is to relieve the charity from the burden of taxes on their limited budgets and thereby to recognize and promote the public benefits that they provide. This is a legitimate state interest. Further-

more, the burden on interstate commerce does not clearly exceed the local benefits. The exemption statute bears no resemblance to the types of economic regulation that "excite those jealousies and retaliatory measures the Constitution was designed to prevent." *See C & A Carbone, Inc. v. Town of Clarkstown*, —— U.S. ——, ——, 114 S.Ct. 1677, 1682, 128 L.Ed.2d 399 (1994). The statute neither increases costs to out-of-state firms nor forces them to leave the market.

Indeed, in the case before us nothing in the record suggests that Camps *competes* with other summer camps outside of or within Maine or that Camps has lost business to competitors. Camps is unique, serving a very limited segment of the population who choose to attend Camps because of the religious affiliation and the desirability of the location and the services. Furthermore, Camps delivers its services only within Maine. Camps does not claim that the exemption statute places it at a competitive disadvantage in attracting campers. Rather, it suggests that paying the taxes precludes it to a certain extent from providing supplemental services for its campers, such as outside art and music consultants. Finally, although the record suggests that the denial of a tax exemption results in increased costs that are passed along "to some extent" to the campers in the form of increased tuition, there is no evidence that the exemption statute impedes interstate travel or that Camps provides services that are necessary for interstate travel. Camps has not met its heavy burden of persuasion that the exemption statute is unconstitutional. *See Maine Milk Producers*, 483 A.2d at 1218.

### Equal Protection Clauses

■ In *Green Acre Baha'i Inst. v. Town of Eliot*, 159 Me. 395, 193 A.2d 564 (1963) (*Green Acre II*), we upheld Maine's charitable tax exemption statute under the equal protection clauses of the Maine and United States Constitutions. The case before us and *Green Acre II* are virtually identical. Neither has the statute materially changed since we decided *Green Acre II*, nor has the equal protection analysis under federal or Maine law so changed as to justify our deviation

from *Green Acre II. See Whyy, Inc. v. Glassboro*, 393 U.S. 117, 120, 89 S.Ct. 286, 287–88, 21 L.Ed.2d 242 (1968) (stating that it is permissible for states to engage in local benefit analysis); *Lambert v. Wentworth*, 423 A.2d 527, 531 (Me.1980) (stating that not all burdens on the right to travel implicate strict scrutiny analysis). Assuming without deciding that Camps has standing to argue the constitutional rights of the campers, *see Craig v. Boren*, 429 U.S. 190, 194–95, 97 S.Ct. 451, 455–56, 50 L.Ed.2d 397 (1976), we find that the exemption statute does not violate the equal protection clause of either the United States or Maine Constitutions.

### Privileges and Immunities Clause

■ Camps also argues that the exemption statute violates the Privileges and Immunities Clause of Article IV, section 2 of the United States Constitution which provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Camps argues that the campers' rights to travel and to be free from discriminatory taxation are protected by the Privileges and Immunities Clause.

We find that the exemption statute does not violate the Privileges and Immunities Clause. The campers may pay a slightly higher tuition if they choose to attend Camps, but they are not directly subject to state taxation. Additionally, the exemption statute does not burden any fundamental rights of the campers. In *Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), the Supreme Court rejected a privileges and immunities attack on a Montana scheme for issuing elk-hunting licenses and held that the Privileges and Immunities Clause only applies to distinctions between nonresidents and residents with respect to "basic and essential activities, interference with which would frustrate the purposes of the formation of the Union." *Id.* at 387, 98 S.Ct. at 1862. An activity must bear "upon the vitality of the Nation as a single entity" before discrimination with respect to it will trigger the Clause. *Id.* at 383, 98 S.Ct. at 1860. The right to attend a recreational summer camp is not a fundamental right, and therefore the exemption statute does not violate the Privileges and Immunities Clause.

Because we find that the exemption statute is not unconstitutional, it is not necessary to discuss the other issues raised by the parties on appeal.

The entry is:

Judgment vacated with respect to count I, and remanded to the Superior Court for entry of a summary judgment for the Town of Harrison. Judgment affirmed with respect to count II.

All concurring.