Lorraine SPILLER, et al.

v.

STATE of Maine, et al.

Supreme Judicial Court of Maine.

Argued May 19, 1993.
Decided June 23, 1993.

John Lemieux, Maine State Employees Ass'n, Augusta, Carol Golubock (orally), Washington, DC, for plaintiffs.

Kaighn Smith, Jr. (orally), Donald Fontaine, Fontaine & Beal, P.A., Portland, amicus curiae.

Cabanne Howard (orally), Asst. Atty. Gen., Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Defendants, the State of Maine and certain named officials, appeal from a judgment of the Superior Court (Kennebec County, *Chandler, J.*) declaring unconstitutional legislative modifications made to the statutes establishing pension benefits for state employees and enjoining enforcement of those modifications. Because the statutory changes do not impact any constitutionally protected rights of the plaintiffs, we vacate the judgment.

Plaintiffs are the Maine State Employees Association and a certified class of all current and former state employees whose employment commenced prior to enactment of the modifications and who did not have seven years of creditable service on December 1, 1991.[1] The employees are members of the Maine State Retirement System. The system was created in 1942 for the purpose of encouraging "qualified persons to seek public employment and to continue in public employment during their productive years." 5 M.R.S.A. § 17050 (1989). Membership in the retirement system is mandatory for state employees,[2] and plaintiffs are required to contribute 6.5% to 7.5% of their salaries to the pension fund. 5 M.R.S.A. §§ 17701, 17701–A, 17708–17712–

A (1989 & Supp.1992). The State is required to provide additional contributions annually in order to maintain a fund that will discharge the State's future pension obligations. *See* 5 M.R.S.A. § 17153(1–A)(B) (Supp.1992). State employees do not qualify to receive service retirement benefits until they have at least ten years of creditable service.[3] 5 M.R.S.A. § 17851 (1989 & Supp.1992). All members of the system, including the plaintiffs in this case, are entitled, at the least, to the return of their contributions together with interest if their service terminates. 5 M.R.S.A. § 17705(2) (1989 & Supp.1992); *see* 5 M.R.S.A. § 17157 (Supp.1992). In addition, the legislature has provided that certain benefits offered by the retirement system, such as life insurance and disability retirement benefits, are immediately vested and due regardless of the employee's length of service. 5 M.R.S.A. §§ 17904, 18051–18061 (1989 & Supp.1992).

In 1991, state government experienced a significant shortfall in revenue, and as part of an effort to reduce state expenditures to close the gap between revenues and expenditures, the legislature modified the prospective retirement benefits for all state employees with fewer than seven years of creditable service as of December 1, 1991. P.L.1991, ch. 591, § EEE (codified at 3 M.R.S.A. § 851 (Supp.1992); 4 M.R.S.A. § 1351 (Supp.1992); 5 M.R.S.A. §§ 17001, 17851–17852 (Supp.1992)). The 1991 statutory changes exclude from the definition of "earnable compensation" payment received for unused leave for sickness or vacation; raise the minimum age for retirement with full benefits by two years to age 62; and

---

**1.** In deciding this case, we do not address the rights of those state employees who have, pursuant to 5 M.R.S.A. § 17851 (1989 & Supp.1992), qualified for service retirement benefits.

**2.** Membership is also mandatory for teachers, who are defined by statute as state employees for purposes of the retirement system. 5 M.R.S.A. §§ 17001(14) & 17651 (1989). Membership is optional for certain elected or appointed officials. 5 M.R.S.A. § 17652 (1989). In addition, judges are required to be members of the separate Maine Judicial Retirement System, 4 M.R.S.A. § 1301 (1989), and legislators are required to be members of the separate

Maine Legislative Retirement System, 3 M.R.S.A. § 801 (Supp.1992). Although the legislature also modified the pension benefits of teachers, legislators, and judges, 3 M.R.S.A. § 851 (Supp.1992); 4 M.R.S.A. § 1351 (Supp. 1992); 5 M.R.S.A. §§ 17001, 17851–17852 (Supp. 1992), these groups are not included in the certified class of plaintiffs. The Maine Teachers' Association has filed a brief as *amicus curiae.*

**3.** Employees also may qualify for service retirement benefits if they have been in state service for one year immediately before the statutory age for retirement. 5 M.R.S.A. § 17851.

increase the penalty for retirement before the minimum age. The modifications substantially reduce the annual contribution required from the State.[4]

Plaintiffs brought this action in the Superior Court seeking a declaratory judgment that the modifications violate the contract clauses of the Maine and United States Constitutions[5] and requesting injunctive relief.[6] The parties stipulated to the essential facts and moved for a summary judgment. The court construed the retirement statute to give to plaintiffs, on acceptance of employment, contractual rights to pension benefits and concluded that the modifications substantially impaired those rights. Although the court found that the goal of reducing the state's deficit was a significant and legitimate public purpose, it did not find that the impairment of rights was reasonable and necessary to accomplish that purpose. Accordingly, the court held that the statutory modifications violated the contract clauses of both the Maine and United States Constitutions. This appeal followed.

In this case, there is no dispute about the historical facts and the court properly entertained the motions for summary judgment. *Lewiston Bottled Gas Co. v. Key Bank*, 601 A.2d 91, 93 (Me. 1992). At issue is the construction of the statutory scheme establishing pension benefits, that is a question of law for the court. *Maine Beer & Wine Wholesalers v. State*, 619 A.2d 94, 97 (Me.1993). "[L]egislative enactments are presumed constitutional and the party challenging the constitutionality of a statute bears the burden of proof." *Maine Beer & Wine Wholesalers*,

619 A.2d at 97. Under time honored rules of construction, a statute will not be presumed to create contractual rights, binding future legislatures, unless the intent to do so is clearly stated. *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66, 105 S.Ct. 1441, 1451, 84 L.Ed.2d 432 (1985). *See also Dodge v. Board of Educ.*, 302 U.S. 74, 78–79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937) (statute providing annuities for retired teachers not a contract); *Pineman v. Oechslin*, 195 Conn. 405, 488 A.2d 803, 809 (1985) (state employees retirement act did not create contractual rights); *Fumarolo v. Chicago Bd. of Educ.*, 142 Ill.2d 54, 153 Ill.Dec. 177, 200, 566 N.E.2d 1283, 1306 (1990) (statute establishing tenure for school principals did not create a contractual right).

[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.

*National R.R. Passenger Corp.*, 470 U.S. at 465–66, 105 S.Ct. at 1451 (quoting *Dodge*

---

**4.** The total savings to the State from these and other modifications not at issue in the present case are estimated at $8,850,000 for fiscal year 1991–1992 and $25,550,000 for fiscal year 1992–1993. The precise savings from the particular modifications at issue here are not specified in the record but constitute a substantial portion of the total savings.

**5.** The Maine Constitution provides:
    The Legislature shall pass no bill of attainder, ex post facto law, nor law impairing the obligation of contracts, and no attainder shall work corruption of blood nor forfeiture of estate.

Me. Const. art. I, § 11.
    The United States Constitution provides:
        No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.
U.S. Const. art. I, § 10.

**6.** Plaintiffs also allege a taking of property without compensation and without due process of law. Me. Const. art. I, § 21; U.S. Const. amend. XIV, *see infra* note 12. The Superior Court decided the case on the basis of the contract clauses.

*v. Board of Educ.*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937)) (citations omitted). *See United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980) (railroad retirement benefits and social security benefits are not contractual and may be altered).

In the retirement statute being construed here, not only is there no clear indication of a legislative intent to create immutable contractual rights for all state employees, the statutory language compels a contrary conclusion. Sections 17050 and 17051,[7] relied on by the plaintiffs, do not create contractual rights. Rather, they state general policy principles, none of which are changed by the enactment of P.L.1991, ch. 591, § EEE. In addition, section 17801 provides that it is only those retirement benefits that *"would be due to a member ... on the date immediately preceding the effective date of the amendment"* that cannot be reduced by amendment to the retirement statute.[8] By implication, the language reserves to future legislatures the power to modify prospective service retirement benefits for employees to whom benefits are not then due. None of the benefits at issue here were due to any plaintiff on the effective date of this legislation.

Although a number of courts have employed a contract analysis, a careful reading of the cases reveals the diversity of circumstances in which the analysis arises.[9] Even in jurisdictions that have decided contractual rights may be implied from a statutory scheme, there is no consensus about when such rights arise.[10] We are unpersuaded by the reasoning of those jurisdictions that have discerned in the statutory language the creation at the time of employment of binding contractual rights. *See, e.g., Betts v. Board of Administrators of Pub. Employees Retirement Sys.,* 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614 (Cal.1978). Our retirement statute con-

---

7. 5 M.R.S.A. § 17050 (1989) provides:

   It is the intent of the Legislature to encourage qualified persons to seek public employment and to continue in public employment during their productive years. It is further the intent of the Legislature to assist these persons in making provision for their retirement years by establishing benefits reasonably related to their highest earnings and years of service and by providing suitable disability and death benefits.

   5 M.R.S.A. § 17051 (1989) provides:

   No law outside of this Part which provides wholly or in part at the expense of the State or of any subdivision of the State for retirement benefits for employees, or for the surviving spouses or other beneficiaries of those employees, may apply to members or beneficiaries of the retirement system or to the surviving spouses or other beneficiaries of those members or beneficiaries. A member may not receive service credit toward a benefit under this Part and under another system supported wholly or in part by the State for the same service.

8. 5 M.R.S.A. § 17801 (1989) provides:

   No amendment to this Part may cause any reduction in the amount of benefits which would be due to a member based on creditable service, earnable compensation, employee contributions, pick-up contributions, and the provisions of this Part on the date immediately preceding the effective date of the amendment.

9. Some jurisdictions employing a contract clause analysis have done so because (1) the statutory change affected an existing collective bargaining agreement, *see Association of Surrogates & Supreme Court Reporters v. State of New York,* 940 F.2d 766 (2d Cir.1991); (2) the state constitution specifically provided that public employees' pension rights are contractual in nature, *see Hammond v. Hoffbeck,* 627 P.2d 1052 (Alaska 1981); or (3) a statute provided that membership in the retirement system establishes contractual rights and benefits, *see Opinion of the Justices,* 364 Mass. 847, 303 N.E.2d 320 (1973). None of these circumstances are present in this case.

10. *Compare Betts v. Board of Administrators of Pub. Employees Retirement Sys.,* 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614, 617 (1978) (contractual right accrues on acceptance of employment) *with Singer v. City of Topeka,* 227 Kan. 356, 607 P.2d 467, 474 (Kan.1980) (employee acquires contract right in pension plan after "[c]ontinued employment over a reasonable period of time during which substantial services are furnished to the employer, plan membership is maintained, and regular contributions into the fund are made"); *Petras v. State Bd. of Pension Trustees,* 464 A.2d 894, 896 (Del.1983) (contract arises once pension vests, meaning eligibility requirements for a pension have been satisfied); *Baker v. Oklahoma Firefighters Pension & Retirement Sys.,* 718 P.2d 348, 350–51 (Okla.1986) (contract right arises at time of eligibility to receive pension).

tains no language expressing an intent to create such rights and we decline to imply them in the absence of such language.[11] To rule otherwise would prohibit the State from amending its retirement plan without giving many years of notice and would unduly restrict the power of the legislature. *Pineman v. Fallon,* 662 F.Supp. 1311, 1318 (D.Conn.1987), *aff'd* 842 F.2d 598 (2d Cir.1988), *cert. denied* 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 48 (1988).

▆▆▆ Although we reject the Superior Court's conclusion that the retirement statute creates immutable contractual rights on acceptance of employment that cannot be impaired under the contract clauses of our constitutions, retirement benefits are more than a gratuity to be granted or withheld arbitrarily at the whim of the sovereign state.[12] *See* Note, *Public Employee Pensions in Times of Fiscal Distress,* 90 Harv.L.Rev. 992, 994–95 (1977).

▆▆▆ Although one may conclude that it was unnecessary or even unwise for the legislature to have enacted P.L.1991, ch. 591, § EEE, it is not for this court "to substitute its opinion on the merits or desirability of the legislation for that of the legislature." *Pineman v. Fallon,* 662 F.Supp. at 1317. Rather, it is for us to determine if the amendments are unconstitutional. In this instance, there is no constitutional violation.

The entry is:

**11.** Cases and commentators have criticized the contract approach for a variety of reasons.

> [T]he contract approach plays havoc with basic principles of contract law, traditional contract clause analysis and, most importantly, the fundamental legislative prerogative to reserve to itself the implicit power of statutory amendment and modification.

*Pineman v. Oechslin,* 195 Conn. 405, 488 A.2d 803, 808 (1985); *see also Fumarolo v. Chicago Bd. of Educ.,* 142 Ill.2d 54, 153 Ill.Dec. 177, 566 N.E.2d 1283, 1306 (1990); Note, *Public Employee Pensions in Times of Fiscal Distress,* 90 Harv. L.Rev. 992, 1002 (1977).

**12.** We have said that state employees have legitimate retirement expectations. *Huard v. Maine State Retirement Sys.,* 562 A.2d 694, 698 (Me. 1989); *Soucy v. Board of Trustee of Maine State Retirement Sys.,* 456 A.2d 1279, 1281 (Me.1983). Those expectations may constitute property

Judgment vacated. Remanded to the Superior Court for entry of a judgment for defendants.

ROBERTS, COLLINS, RUDMAN and DANA, JJ. concurring.

WATHEN, Chief Justice, with whom GLASSMAN, Justice, joins, dissenting.

We respectfully disagree that plaintiffs have no contractual right to benefits under the state pension system. The Court's opinion defeats the legitimate expectations of public employees and defeats the purposes for which the Legislature created the retirement system. The Court's holding should come as a surprise to the State because it acknowledged that it had a contractual relationship with plaintiffs to provide pension benefits. In our view, the statutory pension system and the relationship between the State and its employees clearly establish a contractual obligation to provide an undiminished level of benefits, and we reject the State's argument that the facts of the present case justify a unilateral reduction of those contractual benefits.

We agree that plaintiffs carry the burden of overcoming a presumption that a statute does not create contractual rights. The Court fails to recognize, however, that this time-honored rule of construction is a presumption only. The Court gives no consideration in this regard to the nature of a pension system as deferred compensation, (*see* Annotation, *Vested Right of Pensioner*

rights that the legislature cannot deprive them of without due process of law. *Pineman v. Oechslin,* 488 A.2d at 810; *Fumarolo,* 153 Ill. Dec. at 201, 566 N.E.2d at 1307; *Spina v. Consolidated Police & Fireman's Pension Fund Comm'n,* 41 N.J. 391, 197 A.2d 169, 175 (1964); *see also* Note, 90 Harv.L.Rev. at 1003–04. Alternatively, the State may be estopped from changing certain benefit provisions in the retirement statutes. *See Christensen v. Minneapolis Mun. Employees Retirement Bd.,* 331 N.W.2d 740, 748 (Minn.1983).

The changes made in this case, however, do not result in a violation of due process. Nor is the State estopped from making them. We do not here determine whether additional changes to the retirement statute would implicate the contract, takings (*see* Note, Harv.L.Rev. at 1003–04), or due process clauses of our constitutions, or the doctrine of promissory estoppel.

*to Pension,* 52 A.L.R.2d 437, 441 (1957) (stating that the generally accepted theory of pensions is that they are part of employees' compensation)), the Legislature's statement of intent in creating the State Retirement System, or the expectations that the Legislature has fostered among public employees. Although a clear statement in a statute that it constitutes a contract would be helpful, it is not the iron-clad requirement that the Court suggests. The Court would have the test be whether the statute expressly states that it is a contract. A more complex analysis, however, is required. As the United States Supreme Court observed:

> The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy. Nevertheless, it is established that a legislative enactment may contain provisions, which when accepted as the basis of action by individuals, become contracts between them and the State or its subdivisions within the protection of Art I, § 10 [the contract clause of the United States Constitution].

*Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938) (holding that Indiana public school teachers had a contract for continued employment based on legislative history, prior Indiana court rulings, and statutory language including the use of the word, "contract").

The State, arguing only that plaintiffs have no legally enforceable right to a particular level of benefits and that the impairment of their contractual relationship is justified by the need to reduce state expenditures, assessed its case realistically and acknowledged a contract. The State's pension plan was created as a benefit to attract and retain qualified employees for public service jobs and to assist public employees in making provision for their retirement. 5 M.R.S.A. § 17050 (1989).[1] To achieve these purposes required an enforceable promise of future benefits. The State characterized its maturing obligations toward these ends as a debt and not as a gratuity. 5 M.R.S.A. § 17151(1) (1989).[2] In apparent recognition that members of the retirement system had an enforceable right to benefits, the Legislature exempted employees' claims for stated pension benefits from discharge by payment of compensation. 5 M.R.S.A. § 17203(4) (1989).[3] Moreover, the Legislature has historically treated pension benefits as deferred compensation when making changes to the retirement system—either preserving benefits, applying modifications to benefits prospectively to new employees, or providing offsetting benefits. In the floor debate of prospective changes in pension benefits in 1984 for future law enforcement employees, legislators stressed the State's obligations to its current employees. "This bill grandfathers every state employee on the payroll today...." Legis.Rec. 484 (1984) (statement of Rep. Hickey). "The bill is no attempt, either, to gain

1. Legislative intent is stated as follows:
   It is the intent of the Legislature to encourage qualified persons to seek public employment and to continue in public employment during their productive years. It is further the intent of the Legislature to assist these persons in making provision for their retirement years by establishing benefits reasonably related to their highest earnings and years of service and by providing suitable disability and death benefits.
   5 M.R.S.A. § 17050 (1989).

2. The Legislature finds that the State owes a great debt to its retired employees for their years of faithful and productive service.
   (A.) Part of that debt is repaid by the benefits provided to retirees through the Maine State Retirement System.

   (B.) Retirees, who depend heavily on these benefits, and current employees, who will one day retire and receive benefits, are concerned about the financial viability of the retirement system.
   5 M.R.S.A. § 17151(1) (1989).

3. Payments of compensation to a member, minus the adjustment to compensation resulting from a deduction or employer pick-up contributions under this section, shall be a complete discharge of all claims and demands based on services rendered by the member during the period covered by the payment, except for any claims or demands for the benefits provided under this Part.
   5 M.R.S.A. § 17203(4) (1989).

revenues from state employees or to break faith in any way with either former employees currently on the retirement rolls or with those that are in the work force today." *Id.* (statement of Rep. Paradis). "Those people already in the system, in effect, have a lifetime contract as to the nature of their retirement system. They stay with what we have on the books." Legis.Rec. 590 (1984) (statement of Sen. Collins). This Court itself has recognized that the State has created "legitimate retirement expectations of [state] employees." *Huard v. Maine State Retirement System*, 562 A.2d 694, 698 (Me.1989) (quoting *Soucy v. Bd. of Trustees of the Maine State Retirement Sys.*, 456 A.2d 1279, 1281 (Me.1983)).

The Court today repudiates the history and the language of the statutory system largely on its strained conclusion that 5 M.R.S.A. § 17801 (1989) supports a finding that plaintiffs do not have any contractual interest in pension benefits.[4] Neither the language of section 17801 nor its history support the result for which the Court apparently has striven. Section 17801 is ambiguous, perhaps intentionally so, and does not distinguish in its guarantee between employees who have fulfilled the conditions for eligibility and those who have not. The Statement of Fact that accompanied section 17801 refers to benefits that have accrued, not to benefits for which employees are eligible. L.D.1939 Statement of Fact (107th Legis.1975). Furthermore, the Court's interpretation of section 17801 regarding "the amount of benefits which would be due to a member" as applying only to benefits which are already due ignores the actual wording of the statute. Section 17801 explicitly prohibits a reduction of pension benefits of employees. Contrary to the gloss provided by the Court, section 17801 reflects the Legislature's intention that pension benefits not be retroactively reduced for current or former employees. Although the Court does not reach the issue today, its interpretation of section 17801 also undermines the pension benefits of those employees who have met the eligibility conditions but who are still accumulating creditable service. Because those employees continue to work, their full benefits are not yet determined so that they are due "on the date immediately preceding the effective date of the amendment." The Court, given its rationale, will be challenged to find legislative intent to create contractual rights "clearly stated" for those employees who have met the eligibility conditions for pension benefits but have not yet retired.

Significantly, having rejected all contractual rights, the Court does not reach any conclusion as to what rights plaintiffs possess in pension benefits. If the inference can be drawn that plaintiffs may have a property interest in pension benefits, (*see* Note, *Public Employee Pensions in Times of Fiscal Distress*, 90 Harv.L.Rev. 992, 1003–1005 (1977)), that interest offers the protection of due process, which affords little protection from significant reductions in benefits as a result of legislative action. *See United States v. Locke*, 471 U.S. 84, 108, 105 S.Ct. 1785, 1799, 85 L.Ed.2d 64 (1985) (stating that, "in altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the State's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply"); *Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985) (holding that food stamp benefits in which plaintiffs claimed a property inter-

---

**4.** There is no United States Supreme Court case standing for the proposition that public pension plans of the form at issue here do not constitute a contractual relationship. This Court notes parenthetically a finding by the United States Supreme Court in *U.S.R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980), that railroad retirement benefits, like social security benefits, are not contractual and may be altered. The basis of that conclusion, however, was the indirect incorporation into the Railroad Retirement Act of a provision in the Social Security Act reserving to Congress the power to alter or repeal benefits. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575 n. 6, 99 S.Ct. 802, 805 n. 6, 59 L.Ed.2d 1 (1979).

est could be reduced or altered through the normal legislative process). The advantages of the view that public employees have merely a property interest in their pension benefits are achieved at the expense of ignoring and defeating the legitimate expectations and the contractual rights of public employees.

The Court fails to recognize that the pension benefits of plaintiffs constitute deferred compensation for their current service. Although no express contract for pension benefits exists, the statutes and the historical record give rise to an implied contract requiring the State to discharge its obligation to pay deferred compensation by providing pension benefits. The pension benefits constitute payment for work already performed. The State's ability to pay this deferred compensation in the future is assured by the employees' contributions and the State's obligation to annually contribute to the pension fund. "[T]he mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments which are immediately due." *Kern v. City of Long Beach*, 29 Cal.2d 848, 179 P.2d 799, 803 (1947). By providing their services and deferring compensation, plaintiffs acquired contractual rights to a pension conditioned upon remaining in state employment for the required length of time. *See Betts v. Bd. of Admin. of Public Employee Retirement Sys.*, 21 Cal.3d 859, 148 Cal.Rptr. 158, 161, 582 P.2d 614, 617 (1978); *see also* Restatement (Second) of Contracts § 45 (1979). Although the State is free to discharge employees in times of financial stress and although it may retain the right to substitute benefits of equal value, the statutory scheme implicitly obligates the State to maintain the level of benefits resulting from the contributions of the employees and the State as long as the employment continues. *See Betts v. Bd. of Admin. of Public Employee Retirement Sys.*, 148 Cal.Rptr. at 161, 582 P.2d at 617.

The appropriate constitutional analysis therefore begins with the question whether the statutory modifications to the pension plan substantially impaired the contractual relationship between plaintiffs and the State. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). The United States Supreme Court has measured the severity of the impairment "by the factors that reflect the high value the Framers placed on the protection of private contracts. Contracts enable individuals to order their personal and business affairs according to their particular needs and interests." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, 98 S.Ct. 2716, 2723, 57 L.Ed.2d 727 (1978). Therefore, total destruction of contractual expectations is not required for a finding of substantial impairment, and state regulation restricting a party to gains reasonably expected does not necessarily constitute substantial impairment. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. at 411, 103 S.Ct. at 704.

Other courts have found substantial impairment from legislation that increases the minimum age at which retirement benefits may be paid, *Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 751 (Minn.1983); that requires state employees to take unpaid leave, *Opinion of the Justices*, 135 N.H. 625, 609 A.2d 1204, 1210 (1992); that defers employees' pay, *Assoc. of Surrogates and Supreme Court Reporters v. State of New York*, 940 F.2d 766, 772 (2d Cir.1991); and that doubles employee contributions to a pension plan without an increase in benefits, *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467, 476 (1980). In the present case, the Superior Court correctly ruled that the reductions of benefits resulting from the modifications constitute a substantial impairment of plaintiffs' contractual rights.

The State may yet exercise its police powers and impair the contractual relationship if it has a significant and legitimate public purpose. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. at 411–12, 103 S.Ct. at 704. That

purpose can be to remedy "a broad and general social or economic problem." *Id.* The State's goal of reducing expenditures at a time of fiscal distress is both a significant and a legitimate public purpose. *See Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d at 751.

Because the State is modifying its own contractual relationship, however, the modifications are subject to special scrutiny, and the Court should require a demonstration that they are reasonable and necessary to the State's purpose. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. at 411 n. 12, 103 S.Ct. at 704 n. 12; *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 25–26, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977). Necessity is assessed by examining whether a less drastic modification or alternative would have achieved the public purpose. Reasonableness is assessed by considering the circumstances and determining the degree to which the problem could have been anticipated. *United States Trust Co. of New York v. New Jersey*, 431 U.S. at 31–32, 97 S.Ct. at 1522.

The State has not demonstrated the necessity for impairing the contractual rights of plaintiffs in its choice among alternatives to close the gap between revenues and expenses. When dealing with a general deficit in the State's budget, the contract clauses of both the state and federal constitutions limit the State's ability to impair the obligations of its own contracts without resorting to more drastic reductions of noncontractual expenditures or to increasing revenues. The choice to impair contractual rights is not an equal choice among other policy alternatives. "A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *United States Trust Co. of New York v. New Jersey*, 431 U.S. at 26, 97 S.Ct. at 1519. This case illustrates the truth of that principle. We need not assess the reasonable-

ness of the modifications because in our judgment the State has failed to demonstrate that the impairment of its contractual relationship with plaintiffs was necessary. Consequently, the modifications violated the contract clauses of both the Maine and United States constitutions. We would affirm the Superior Court.