STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-09-12
*DHM -PEN- 7/21/2011*

NORMAN E. BUDGE et al.,

    Plaintiffs

v.

    DECISION AND ORDER

TOWN OF MILLINOCKET,

    Defendant

Before the court is a motion of defendant, Town of Millinocket ("Town") for summary judgment on Counts II, III, and IV of plaintiffs' complaint.[1]

Count II of the complaint alleges a breach of contract on the part of the Town when it "voted to phase out the provision of Retiring Insurance Benefits to Plaintiffs." Count III alleges a taking without due process alleging the Town "deprived plaintiffs of their property without just compensation when it voted to phase out the provisions of Retiring Insurance Benefits to plaintiffs in violation of the Maine and the United States Constitutions." Count IV is a count of promissory estoppel, alleging that the Town promised and assured the plaintiffs that it would provide lifetime retiree insurance benefits at Town cost and that plaintiffs' reasonably relied on defendant Town's promises and assurances; by reason of the reasonable reliance, the plaintiffs suffered damages and injustice may only be avoided by enforcing the defendant's promises to provide paid lifetime retiree insurance benefits.

Of the thirty-one present plaintiffs, fifteen retired prior to August 8, 1991; seven were hired prior to August 8, 1991, and retired prior to July 10, 1999; eight plaintiffs

---

[1] Count I, petitioning for judicial review of government action pursuant to M.R. Civ. P. 80B is dismissed by this court's order of December 8, 2009.

were hired prior to August 8, 1991, and retired after July 10, 1999; and one plaintiff was hired after August 8, 1991, and will retire after July 10, 1999.[2]

In 1983, the Town of Millinocket adopted a personnel policy, effective February 11, 1983. Section 17 of that policy, is titled, "Retirement Plan and Group Hospitalization." In that section, the Town declares that it is a participating member of the Maine State Retirement System, that it has a life insurance and group hospitalization plan, and that it is funded 100% by the "Municipality for employees, spouses, and children." In 1987, the Town adopted a "Millinocket Code." This Code contained Chapter A128, titled, "Personnel Policy." Section A128-17 of that Code provides that the Town will continue to be a participating member of the Maine State Retirement System, the Town holds a life insurance and group hospitalization plan and the plan is funded 100% by the Municipality for employees, spouses, and children. On August 8, 1991, the Town amended the provision to add,

> Employees, other than School Department employees, who retire from Town service and qualify for retirement or disability benefits under the Maine State Retirement System shall continue as members of the Towns group hospitalization plan, at that the Town's expense, to the same extent as current employees. The Town shall also pay for coverage for the former employee's spouse. This benefit shall apply to former union employees of the Town, as well as nonunion employees. *The Town reserves the right to change this benefit in the future as circumstances require. Any such changes shall apply only to employees hired after August 8, 1991.*

(Emphasis added.) This paragraph survived a 1995 amendment.

Effective July 10, 1999, the Town enacted, "Ordinance #1-99." The document which was provided to the court as an exhibit shows an introductory comment to the amendment of the personnel policy as "(Option 1—Employees Pay Portion, Retirees

---

[2] The complaint was brought by thirty-three former employees of the Town of Millinocket seeking recovery from the Town. Two plaintiffs have withdrawn.

paid 100% by Town.)." This amendment to the personnel policy contains the following language,

The Town reserves the right to discontinue this benefit or to change coverage and providers from time to time as well as the portion of the premiums paid by the Town and its employees with our without prior notice.

Until July 31, 1999, the Town shall pay the premium for employee and dependent coverage.

As of August 1, 1999, the Town shall pay 90% of the premium for employee and dependent coverage and the employee shall pay 10% of such premium.

Section 2 of the personnel policy amendment states:

Employees hired prior to August 8, 1991, other than School Department employees, who retire from Town service and qualify for retirement or disability benefits under the Maine State Retirement System shall continue as members of the Town's group hospitalization plan to the same extent as current employees. . . . *The Town shall pay the premium for the former employee and spouse.*

(Emphasis added.)

Effective January 1, 2002, the Town further amended the personnel policy under Chapter A128. This amendment contained language calling for a declining scale of premium payments by the Town for employees. This amendment contains the sentence, "The Town reserves the right to discontinue this benefit or to change coverage and providers from time to time as well as the portion of the premiums paid by the Town and its employees with or without prior notice." However, paragraph D provides special language for "employees hired prior to June 10, 1999". After reciting special conditions, it states, "The Town shall pay *the* premiums." (Emphasis added.)

Chapter A128 of the personnel policy was further amended on May 14, 2009. Provision A128-17 reiterates that beginning January 1, 2008, with payroll deductions,

3

the Town will pay 87% of the health insurance plan for qualified nonunion employees. However, a paragraph was added as follows:

> Beginning October 1, 2009, all retirees will pay a portion of their health insurance costs. The Town will pay to each qualified retiree an amount set by the Town that is based on a prorated percentage of a total Retiree Health Insurance Pool (Pool) of $315,000 (including eligible Town and Wastewater retirees) as of July 1, 2009. The amount of this pool will decrease annually as attrition and the pool of qualified retirees occurs on a dollar for dollar basis. The pool will also be prorated each year to account for new retirees added to the pool.

The amendment goes on to provide that as of January 1, 2010, the Town would contribute to the cost of retiree health insurance based upon its Point of Service Plan (POS). It also provides that subsequent to January 1, 2010, any future premium increases would be paid 100% by the retiree.

Because all but one of the plaintiffs were hired by the Town prior to August 8, 1991, at a time when the Town paid 100% of the premiums for the retiree health plan, plaintiffs assert that the Town is obligated by law to continue to pay 100% of the premium, and that subsequent changes of policy causing them to be responsible for premium payments are contrary to the Town's legal obligations. Under the terms of the policy, the plaintiffs assert that the Town created a contract with the employees then hired and that changing that provision in future years, *after* the employees retired, is a breach of that contract. They further argue that the removal of payment of 100% of the hospitalization plan premiums amounts to a taking of their property without due process of law, asserting, consistent with a breach of contract theory, that they have a property right in the 100% payment of those premiums. Finally, the plaintiffs argue promissory estoppel.

In addition to the ordinance/policy language, which plaintiffs argue provides a clear intent on the part of the Town to guarantee full payment of premiums, the retirees

4

allege, as a matter of fact, promises made by persons with perceived authority. These alleged promises, they believe, constitute a guarantee of the 100% premium payment. Further, the promises were so numerous as to become "common knowledge," and the promises were made by Town managers, department heads, and other supervisory personnel. For purposes of this motion, the court will accept as fact that, over the years and under various times of the policy, certain oral representations were made and the plaintiffs believed, in good faith, that the Town had guaranteed to them full payment of the premiums upon retirement for life.

By law, a town "official" means any elected or appointed member of a municipal or county government or of a quasi-municipal corporation. 30-A M.R.S.A. § 2604(2). Generally speaking, municipal officers are, in this case, the Town Council and the Town Manager. As specifically provided by law, charter, or ordinance, the municipal officers shall appoint all municipal officials and employees required by general law, charter, or ordinance and may remove these officials and employees for cause, after notice and hearing. 30-A M.R.S.A. § 2601(1). The defendant falls under the law as a form of government called "The Town Manager Plan," as a town in which the voters have adopted the plan at a meeting held at least ninety days before the annual meeting. 30-A M.R.S.A. § 2631(1).

In accordance with 30-A M.R.S.A. § 2636, the town manager is the chief executive and administrative official of the town responsible for administration of all departments in regards to the ordinances of the town, and may serve as head of any department, appoint department heads, appoint town officials, act as purchasing agent, attend all meetings with the board of selectmen, make recommendations to the selectmen, attend all town meetings, keep the board of selectmen and residents of the town informed as to the town's financial condition, collect all data necessary to prepare the budget, assist

5

residents and taxpayers of the town, and has the explicit authority to remove for cause all persons whom the manager is authorized to appoint.

Inasmuch as these general provisions and the municipal law are subject to specific provisions in the charter, *see S. Portland Civil Serv. Common v. City of S. Portland,* 667 A.2d 599 (Me. 1995), the court must examine the charter of the Town of Millinocket to determine the authority of the Town Manager and Town Council. Section II of the Millinocket Code is titled, "Town Council in Full Session." Section C203 contains powers and duties generally and provides members of the Town Council shall be and constitute the municipal officers of the Town of Millinocket for all purposes required by statute, except as specifically provided in the Charter, and shall "have all powers and authority given to, and perform all duties required of, municipal officers in the laws of this State . . . ." Section C204 provides that the Council shall appoint the Town Manager, and by ordinance create and abolish offices and departments and assign functions and duties. It further provides that the Council may vest in the manager all powers and duties of any office except the School Department. Part of its enumerated powers is to "make, alter and repeal ordinances." Section C212 provides that the Council shall act "only by Ordinance, order or resolve." Section C216 provides for the appointment of the Town Manager by the Council to perform the duties provided in the Charter. By section C302, Powers and Duties,

> The Town Manager shall be the Chief Administrative Officer and the head of the administrative branch of the Town government and shall be responsible to the Council for the appropriate administration of all affairs of the Town. He shall have the power and shall be required to:
>
> > (A) Appoint, describe the duties of, and, when necessary for the good of the service, remove all officers and employees of the Town. . . .
> >
> > (B) Prepare the budget annually, submit it to the Council, and be responsible for its administration after adoption.

6

. . . .

> (E) See that all laws and ordinances governing the Town are faithfully executed.

In this motion for summary judgment, the defendant argues that there are no disputed material facts with respect to the plaintiffs' contracts, constitutional and estoppel claims and the Town is entitled to a judgment on those claims as a matter of law.

First, the defendant recites the economic history of the Town. While the information appears in a number of pleadings, the court takes judicial notice that the Town of Millinocket, once a thriving and busy industrial community, has lost essentially all of its industry and has suffered significant and substantial losses in its economy. The economic history follows side-by-side with the various amendments to the retirement policy of the Town as it relates to the Municipal budget for the years in question. As such, the court must take notice of the public interest and public policies which the Town Manager and Town Council are charged with protecting. It further notes that the Town had no written policy governing the terms and conditions of employment by its employees until 1978 when the Town adopted the first personnel policy. Defendant asserts that each policy included some language stating that any amendments to the policy would be by order of the Town Council after annual review by the Manager. The Town notes that the personnel policy adopted in 1991 would remain in effect until 1999 and carried an exception to the reservation of right to change relating to employees hired before August 8, 1991. It argues that the 1999 policy kept the 1991 language wherein it provided that the Town reserved the right to discontinue the benefit as portion of the premiums without prior notice without reference to the August 8, 1991 provision then in effect. While there appears to have been later union

7

contracts which contain language regarding retirees health insurance benefits, it is clear from all of the evidence that the personnel policy applied to union and nonunion personnel *in so far as it related to the retiree benefit*.[3] (Emphasis added.)

To the assertions that representations or promises were made by the Town Manager, the Police Chief, and the Fire Chief, during employment or during exit interviews regarding the guarantee of a fully paid health policy for retirees, the Town insists that the Charter makes clear that those individuals have no authority to amend the terms laid out in the personnel policy, that the Town Manager's responsibility was to administer the policies of the Town, and that any amendments to the policies must be submitted to the Town Council for consideration.

As to the breach of contract claim, the defendant relies on *Spiller v. State*, 627 A.2d 513 (Me. 1993). The *Spiller* case involved a State statute, and states under "honored rules of construction, a statute will not be presumed to create contractual rights, binding future legislatures, unless the intent to do so is clearly stated." *Id.* at 515. The case suggests that a policy continues unless the Legislature ordains otherwise. The presumption is grounded in the elementary proposition, "that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state." *Id.* at 516. The decision goes on to adopt the statement, "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Id.; see Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S.451, 465-66. Under the Charter, the Council of the Town is its legislative body.

---

[3] The union employees would be governed by the union contract with any matters not consistent or contrary to the personnel policy. This did not contain retiree benefits, and upon retirement, the personnel policy governed the status of the retiree and his or her spouse.

Quoting *Pineman v. Oechslin*, 488 A.2d 803 (Conn. 1985), it is defendant's position that the promissory estoppel approach, "in focusing attention on the reasonable expectations of an employee, ignores the distinction traditionally made between private and public entities in determining the existence of contractual rights and obligations." *Id.* at 809. It cites *Kizas v. Webster*, 707 F.2d 425, 535 (D.C. Cir. 1983), supporting the proposition that the "courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." *Kizas*, 707 F.2d at 535. The *Pineman* Court views the distinction as another way of articulating the requirement of an express legislative intent to contract. The Town argues that there can be no consideration by the employees or "injustice" flowing from the alteration of the benefit because, it asserts, the 100% premium payment of health insurance to retirees was gratuitous in the first instance. The Municipality is not bound by statements of a Town official in connection with the hiring of an employee expecting employee benefits upon retirement. In *Spiller* it is clear that a retirement plan does not create an enforceable contract or right at the time of hiring as it would otherwise unduly restrict the power of the Legislature.

The defendant further argues that the statute of frauds provides a bar to plaintiffs' claim as these were employees at will wherein such terms of employment could not be performed within one year.

As to the claim of an unconstitutional taking, the Town argues that such a claim requires proof of a recognized property interest and an illegal deprivation by the State. The defendant notes that such cases that discuss property rights in the pension context relate to property rights in existing retirement funds, not the premium payments in a defined benefit plan.

The plaintiffs' objection to the defendant's motion for summary judgment is, first of all, predicated upon the language of the amendment. Under the circumstances surrounding the amendments and establishing the intent of the Council when enacting the policy changes, the plaintiffs argue that the language specifically identifying those persons hired before August 8, 1991, is not subject to the right of the Council to change the policy but a clear intent to bind future councils from ever changing their rights to full payment of premiums in those retirees. This language intent would run counter to the subsequent amendments in the policy which removed the specific exception for hirees before August 8, 1991. It is the plaintiffs' position that they were guaranteed by that language protection from the 1991 and all subsequent amendments.

The plaintiffs also assert that the specific instances of employees and retirees being told by Town officers of the right to paid health insurance in their pension has created an estoppel in the Town from denying the benefit to the retirees. Plaintiffs distinguish *Spiller* on the basis that *Spiller* found no express or clear indication of a legislative intent to create contractual rights. The plaintiffs argue that the conduct upon which plaintiffs are expected to rely can be more than express language, but may be implied through conduct, relying strongly on statements from Town managers and the fact that the Town has been paying 100% of retired players health insurance benefits for years. They also believe that those circumstances provide genuine issues of material fact, including whether the plaintiffs accepted lower wage increases or other benefits in reliance on the promises of a lifetime health insurance payment.

Contrary to the action by the Town Council of Millinocket, plaintiffs argue that the defendant's action are in violation of the Maine and United State Constitutions in that they believe that plaintiffs' interest in their health and life insurance benefits being paid 100% by the defendant for their lives is a property interest protected by those

10

Constitutions. Property, in this context, refers to more than actual ownership of real estate, chattels, and money, but also to an interest that a person has acquired in a specific benefit. *Beitzell v. Jeffrey*, 643 F.2d 870 (1st Cir. 1981). They argue that these benefits are neither potential nor are they future profits or gratuitous governmental benefits.

Finally, plaintiffs argue that the Charter of the Town provides the authority of the Town Manager to make an enforceable promise, creating a contract or promissory estoppel, emphasizing that the Town Manager is the Chief Administrative Officer and has the power to "appoint, prescribe the duties of and, necessary for the good of the service remove all officers and employees of the Town . . . ." Although the theory is not expressly stated, it is implied from plaintiff's argument that each of the individual plaintiffs have their own set of circumstances in which they believe there are genuine issues of material fact vis-à-vis their employment and promises of retirement, which must be heard, and thereby the defendant is not entitled to summary judgment.

It appears to be undisputed that the Town participated in the Maine State Retirement System and had a life insurance and group hospitalization plan paid 100% by the Town up to and as codified in the policy of 1983 and paid 100% premiums for retirees up until August 8, 1991, at which time the policy became part of the Town Code. This specifically provided for retirees to continue as members of the Town's group hospitalization plan at the Town's expense to the same extent as the employees. As a separate matter, the Code made clear that the Town reserved the right to change the benefit but made that reservation apply only to employees hired after August 8, 1991. This limitation on the Town's reservation continued through the amendments in 1995. The changes in the personnel policy effective July 10, 1999, for the first time, reserved in the Town a right to "discontinue this benefit or to change coverage and

providers from time to time as well as the portion of premiums paid by the Town and its employees with or without prior notice.

The 1999 amendment reserved in the Town the right to discontinue the benefit or to change coverage and providers as well as a portion of the premiums paid by the Town and its employees with or without notice. This amendment introduced the payment by the Town of 90% of the premium for employees and dependents, but utilizing the same August 8, 1991 date, it provided that retirees would continue as members of the Town's group hospitalization plan to the same extent as current employees, and goes on further to say that, "the Town shall pay the premium for the former employee and spouse." This is the first time there is a break in entitlement between current employees and retirees hired prior to August 8, 1991. On the one hand it states that the retirees shall continue in the plan "to the same extent as current employees," who under the amendment would pay 90% of the premium. It goes on further to say that the Town would pay the premium for the retirees. It is this court's understanding that, in fact, the Town continued to pay 100% of the premiums of the employees who were retired but had been hired prior to August 8, 1991.

The amendments to the personnel policy effective January 1, 2002, mentions continuing "to contribute 90% toward the monthly premiums for qualified nonunion employees or retirees who retired on or after January 1, 2002." It contains the reservation of right to discontinue the benefit without reference to August 8, 1991, however, it provides that regarding employees hired prior June 10, 1999, the Town shall pay the premium for the former employee, spouse, and legally dependent children as defined in the plan. With the amendment of May 14, 2009, the Council adopted the policy that "beginning October 1, 2009, all retirees will pay a portion of their health insurance cost."

12

The fundamental issue, then, is whether, as a matter of undisputed facts and law, the plaintiffs who were hired prior to August 8, 1991, and one who will retire after July10, 1999, are entitled to a continuation of the payment of 100% of their retirement health plan from October 1, 2009, for the rest of their lives.

In 1982, the Law Court, in the matter of *Sirois v. Town of Frenchville*, 441 A.2d 291 (Me. 1982), addressed the issue of whether a member of the board of selectmen could bind the town to a contract where his authority to act alone is not proven or actions not subsequently ratified. In contracting with a town or city officers persons must take notice of the power and the extent of the authority of such officers. "It is not the town's burden to establish the actions of authority, but the plaintiff's burden to prove the authority." *Id.* at 294 (citing *Van Buren Light & Power Co. v. Inhabitants of Van Buren*, 116 Me. 119, 123, 100 A. 371, 372 (1917)). More specifically, *Sirois* examined the statutory authority of the town manager in existence at that time, referring to 30 M.R.S.A. § 2317 (1978). The court says the "legislature has listed in that statute fourteen specific acts which the town manager is authorized to do; absent from that list is the power to contract on behalf of the Town." *Sirois*, 441 A.2d at 294.

*Sirois* was followed in 1997 by *Cottle Enterprises. Inc. v. Town of Farmington*, 1997 ME 78, 693 A.2d 330, in which the Court notes, the "unauthorized act of a municipal officer cannot be grounds for equitably estopping the municipality." *Id.* at 336 (citing *Sirois*, 441 A.2d at 294-95 (same with respect to promissory estoppel)).

The language of the present statutory authority of a town manager contained in 30-A M.R.S.A. § 2636, does not include the power to contract. Further, the charter of the Town of Millinocket, in its chapter relating to the Town Manager, does not contain the power to contract. Most appropriate to this proceeding, the Charter specifically provides for the Town Manager to prepare an annual budget to be submitted to the

Town Council, and to be responsible for the administration of that budget after adoption by the Town Council. Town payment of health plan premiums would require budget approval as a fundamental principle of municipal law. To the extent that the Town Manager is considered an administrator, Webster's New World Dictionary of the American Language, College Edition (1966), defines an administrator as "a person who administers; person who has executive work or ability." To "administer is "To manage; conduct; direct". *Id* at 19. Black's Law Dictionary, Seventh Edition defines administration as, "the management or performance of the executive duties of government, institutions or business." "In public law, the practical management and direction of the executive department and its agencies".

There is nothing in the statute or charter providing the authority in the Town Manager to contract on behalf of the Town. Needless to say, that would equally apply to other officers of the Town such as the Chief of Police and the Chief of the Fire Department. As stated, even an individual member of the Town Council would not have that authority under a doctrine of promissory estoppel. To the extent that plaintiffs are relying upon statements, promises, or assurances by officers of the Town, either legislative or executive, the claim under a doctrine of promissory estoppel must fail.

In making that finding, the court notes that other "courts have consistently refused to give effect to government-fostered expectations, that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." *Kizas v. Webster*, 707 F.2d 524, 535 (D.C. Ct. App. 1983). The court in *Pineman v. Oechslin*, 488 A.2d 803 (Conn. 1985) states:

> This distinction can be viewed as another way of articulating the requirement of an express legislative intent to contract. When the legislature intends to surrender its power of amendment and revision by

creating a contract and thereby binding future legislatures, it must declare that intention in clear and unambiguous terms. A relinquishment of this authority should not occur by legislative inadvertence or judicial implication.

*Id.* at 809.

Further, one cannot avoid the statute of fraud by resorting to a promissory estoppel theory. In *Popanz v. Peregrine Corp.*, 1998 ME 95, 710 A.2d 250, the Court declined to accept promissory estoppel as permitting avoidance of the statute of frauds in employment contracts that require longer than one year to perform. *Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72 . It relied on *Rancourt v. Waterville Osteopathic Hosp.*, 526 A.2d 1385, 1389 (Me. 1987), for the proposition that the employer's "oral promise creates no more 'than a contract of employment for an indefinite period of time . . . terminable at will by either party.'"

Defendants argue that the removal of the full payment of health care premiums amounts to an unconstitutional taking. In *Kizas*, the United State Court of Appeals of the District of Columbia dealt with federal employees complaining of the modification of a special preference program, which the employees asserted was a form of deferred compensation. They argued that their legitimate expectations in receiving the preference created an indefeasible property right. The court noted that plaintiffs, "for purposes of procedural due process guarantees," argue that "a person has a 'property interest' in a governmentally conferred benefit if he has a 'legitimate claim of entitlement' to the benefit." *Kizas*, 707 F.2d at 539. The court goes on to say, "A 'legitimate claim of entitlement' to a government benefit does not transform the benefit *itself* into a vested right. Rather, due process 'property interests' in public benefits are 'limited, as a general rule, by the governmental power to remove, through prescribed procedures, the *underlying source of those benefits.*'" *Id.* (citing *O'Bannon v. Town Court*

15

*Nursing Ctr.*, 447 U.S. 773, 796, 798, 100 S. Ct. 2467 (1980).

The plaintiffs seem to challenge on due process grounds, the actions of the Town Council in amending the retirement policy. The implication is that the plaintiffs were not given an opportunity to participate in the legislative procedure.[4] Although plaintiffs presented no evidence that the proceedings of the Town Council, particularly the vote of the Town Council members, were not held in a public proceeding, nor that notice of such issues which were to be considered by the Council was not given, nor were plaintiffs deprived the opportunity to be heard. Records of the proceedings suggest otherwise.

Maine law is clear that due process requires some kind of a hearing before a government deprives a person of property. However, before that requirement becomes part of a due process requirement, the party must establish that he had a property right and entitlement in question. *Struck v. Hackett*, 668 A.2d 411 (Me. 1995). Plaintiffs further support their claim under a theory of breach of contract, asserting that the language of the amendments to the policy constituted a unilateral offer on the part of the Town, which evolved into an enforceable contract by the employees continuing to work for the Town, and asserting factually, that they relinquished claims for increased salary and wages in reliance upon the expectation of a free lifetime health plan upon retirement. They note at least one court has opined that the promissory estoppel approach is simply viewed as another way of articulating the requirement of an express

---

[4] The court notes that the actions by the Town Council in changing the policy is a legislative procedure and not an adjudicative procedure. "Although an ordinance enacted by a municipal body and a statute is enacted by the Legislature, the process of an ordinance is equivalent to legislative action. 5 Eugene McQuillan, *The Law of Municipal Corporations*, § 15.01 (3d ed. 1989). Therefore, the rules of statutory construction can be employed by us when construing an ordinance. "The meaning of terms in an ordinance is a question of law for the court. Terms in the ordinance are to be 'construed reasonably with regard to both the objective sought be obtained and the general structure of the ordinance as a whole.'" *So. Portland Civil Serv. Comm'n v. City of So. Portland*, 667 A.2d 599 (citations omitted).

16

legislative intent to contract. *Pineman*, 488 A.2d at 809.

The parties allude to *Spiller v. State*, 627 A.2d 513, for a discussion of Maine law regarding the rights under legislative actions to a contract. Some months prior to *Spiller*, was *Me. Beer & Wine Wholesalers Ass'n v. State*, 619 A.2d 94 (Me. 1993), where the court reiterates that

> the "fundamental rule" in statutory construction is that the legislative intent as divined from the statutory language controls the interpretation of the statute. Unless the statute reveals a contrary intent, the words "must be given their plain, common and ordinary meaning." . . . To determine legislative intent when there is an ambiguity in the statute, [however,] the court may look beyond the words themselves to the history of the statute, the policy behind it, and contemporary related legislation.

*Id.* at 97.[5]

*Spiller*, is the result of a budgetary shortfall similar to the circumstances before this court and the State legislature made modifications to the pension benefits of State employees. Quoting *Spiller*, 627 A.2d at 515, "legislative enactments are presumed constitutional, and the party challenging the constitutionality of a statute bears the burden of proof." The court goes on to state that "[u]nder time honored rules of construction, a statute will not be presumed to create contractual rights, binding future legislatures, unless the intent to do so is clearly stated." *Id.* The Court found that the legislative action did not create contractual rights, but "[r]ather, they state general policy principles . . . ." *Id.* at 516. In addition, similar to language found in the present case, the court notes that legislature provided language that retirement benefits "would be "*due to a . . . on the date immediately preceding the effective date of the amendment*" that cannot be reduced by amendment to the retirement statute." *Id.*

---

[5] For purposes of this analysis, the court is satisfied that the Town Council acts legislatively and the Town Manager acts as executive. Further, the Town Council acts by the passage of ordinances and orders. The court is satisfied that the policy statements with respect the retiree health plan is akin to State statutes in this context whether by ordinance or order.

The *Spiller* court allows that "retirement benefits are more than a gratuity to be granted or withheld arbitrarily at the whim of the sovereign state," *id.* at 517, noting that the Court has said that State employees have "legitimate retirement expectations." *Id.* at 517, n.12 (*citing Huard v. Me. State Retirement Sys.*, 562 A.2d 694, 698 (Me. 1989)). They go on to state that "[t]hose expectations may constitute property rights that the legislature cannot deprive them of without due process of law," *citing Pineman v. Oechslin*, 488 A.2d at 810. Further, alternatively, "the State may be estopped from changing certain benefit provisions in the retirement statutes." *Spiller*, at 517 n.2 (*citing Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 748 (Minn. 1983)).

In *Parker v. Wakelin*, 123 F.3d 1 (1st. Cir. 1997), the court was dealing with State law in which the retirement terms of the Maine State Retirement System were amended by the Maine State Legislature. In following Maine law, it stated that in order to deem a State legislative enactment a contract for the purpose of the Contract Clause, there must be a clear indication that the Legislature intends to bind itself in a contractual manner. Unless there is some clear indication that the Legislature intends to binds itself contractually, the presumption is that a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. "A statute may be treated as a binding contract 'when the language and the circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.'" *Id.* at 13. "This threshold requirement for the recognition of public contracts has been referred to as the 'unmistakability doctrine.'" *Id.*

The rationale for the doctrine is found in *Damon v. S.D. Warren Co.*, 2010 ME 24, 990 A.2d 1028, stating that for the Court to consider a statute by giving it legislative

18

intent, it must come from the plain meaning of the statutory language. The issue of whether the statutory language is ambiguous is a question of law. This is further expounded in *Coastal Ventures v. Alsham Plaza*, 2010 ME 63, 1 A.3d 416, which provides that a "contractual provision is considered ambiguous if it is reasonably possible to give that provision at least two different meanings."

In examining the ordinance and policy of the Town of Millinocket, during the period of years in question and the various amendments enacted as a result of the public interest and financial integrity of the municipal government, the court is satisfied that the language is unambiguous and clearly indicates the intent of the Town Council in taking the legislative action. Further, the court makes a distinction in the various forms of the policy between an entitlement to the benefits of Town payment of health insurance premiums and the reservation by the Town of the right to change the policy. Generally speaking, it is clear from the language that the Town attempted to protect those persons who were receiving a benefit at the time of the enactment of the policy amendment to the point where it deemed the circumstances required a change in that policy and the public interest. The court also views no ambiguous language distinguishing the application of the amendments to the policy between current employees and those who had retired. The language which stated that retirees were to hold membership in the health plan to the same extent as employees is specific to benefits under the terms of the plan and not the obligation of the Town to pay premiums or to reserve the right to change the policy.

That language is in the August 8, 1991 amendment, which unequivocally provided that employees who retire, and qualified under the Maine State Retirement System, "shall continue as members of the Town's group hospitalization plan, at the Town's expense, to the same extent as current employees." This language is implicit

19

with respect to the obligation of the Town to meet the expense of the plan for the retirees. The Town Council, recognizing a group of former employees who were hired and some retired prior to the date of this amendment, decided, as a matter of policy, to reserve the right to change that benefit only regarding employees hired after August 8, 1991. No change in the language took place in the 1995 amendment. In 1999, the Town Council changed the policy with respect to employees, and provided separate language with respect to employees hired prior to August 8, 1991. The language providing that those employees shall continue as members of the Town's group hospitalization plan to the same extent as current employees, omitted the previous language ". . . at the Town's expense . . . ." As part and parcel of the same paragraph, the amendment goes on to state "the Town shall pay the premium for the former employee and spouse." In addition, the policy stated the reservation in the Town to discontinue the benefit or to change providers and coverage as well as a portion of the premiums paid without any reference to the applicability of this reservation to employees hired prior to August 8, 1991. The absence of that language took it out of the reservation clause, since it was specifically stated in the benefit clause that the Town would pay the premiums for the former employees. However, whether intentional or not, the document containing the amendment states that the language is "(Option 1, employees pay portion, retirees paid 100% by Town.)" It is clear to this court that the plain language of the amendment called for employees hired prior to August 8, 1991, who had retired, to continue to have the benefit of the premiums paid by the Town. In fact, it is stipulated by the parties that "until October 2009, the Town paid 100% of the premiums for that insurance." Fact stipulation, ¶ 74.

This brings us to the amendment of May 14, 2009, which states, "Beginning October 1, 2009, all retirees will pay a portion of their health insurance cost." None of

20

this language constitutes a breach of a contractual obligation by the Town to be enforced by this court that the Town Council unequivocally, and for the remainder of the lives of the retirees, obligated it to pay 100% of the premiums of the retiree health insurance plan for those persons hired prior to August 8, 1991. As a matter of law, the presumption is, that it does not.

On other occasions, the Town protected employees hired prior to a certain date as noted in the amendment effective January 1, 2002. In that case, it provided that with regard to former employees hired prior to June 10, 1999, the Town shall "pay the premium for the former employee, spouse, and legally dependent children as defined in the plan." This was a continuation of the substantial change made in the 1999 amendment wherein the Town initiated a formula of partial payment of premiums for employees.

It is clear that the Town Manager, in presenting the budget proposal to the Town Council, considered the financial circumstances of the taxable base and that schedules of modifications in the costs of the retirement health plan would be in order and adopted by the Council. That analysis, obviously included a policy that persons hired prior to the modifications in the policy should be protected as a matter of a moral obligation of the municipal government to its employees. As noted in *Spiller*, 627 A.2d at 517 n.12, the conclusion to be reached, in a reading of the policies in question, and confining the determination solely to the written policies, disregarding the untenable claims of unconstitutional taking and promissory estoppel, is that those employees who were hired prior to August 8, 1991, were entitled to have full payment by the Town of the premiums of the health insurance plan on retirement up to October 1, 2009, at which time the policy by the Town Council legislatively changed.

In accordance with the policy effective January 1, 2002, the one plaintiff who was

hired after August 8, 1991, and who will retire after July 10, 1999, is subject to the same conclusion.

Accordingly, the entry will be:

> Defendant's motion for summary judgment is granted; judgment for the defendant.

July 21, 2011

DONALD H. MARDEN
JUSTICE, SUPERIOR COURT

| Date Filed | 6/10/09 | Penobscot | Docket No. | AP-2009-12 |
|---|---|---|---|---|

County

PAGE 2

Action  M.R.Civ.P. 80B Appeal

ASSIGNED TO JUSTICE WILLIAM R. ANDERSON - RECUSED
JUSTICE M. MICHAELA MURPHY - RECUSED
ASSIGNED TO DONALD H. MARDEN

NORMAN BUDGE, ET ALS  (See first page)    vs.    TOWN OF MILLINOCKET

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EDMOND BEAROR, ESQ.<br>JOHN K. HAMER, ESQ.<br>RUDMAN & WINCHELL<br>P O BOX 1401<br>BANGOR ME   04402-1401 | Jeffrey T. Piampiano, Esq<br>Drummond Woodsum<br>84 Marginal Way<br>Suite 600<br>Portland ME   04101-2480<br><br>Dean Beaupain, Esq.<br>PO Box 1404<br>Bangor, ME 04402-1404 |

| Date of Entry | |
|---|---|
| 6/10/09 | Complaint for Review of Government Action pursuant to M.R.R.Civ.P. 80B filed by Plaintiffs. |
| 6/10/09 | Plaintiffs' Motion for an Order Specifying the Future Course of Proceedings with proposed order filed by Plaintiffs. |
| 6/10/09 | Plaintiffs' Motion for Trial of the Facts with incorporated Memorandum of Law filed by Plaintiffs with proposed order. |
| 6/11/09 | Notice and Briefing Schedule 80B Appeal of Governmental Actions forwarded to attorney for Plaintiffs. |
| 6/30/09 | Acceptance of Service by Dean A. Beaupain, Esq. on behalf of Defendant filed. (S.D. 6/26/09) |
| 6/30/09 | Consented-To Motion to Extend Deadlines for Responding to Motions and to Answer or Otherwise Respond to Plaintiff's Complaint. |
| 7/8/09 | Order (Anderson, J)  Upon review of the above entitled file, I must Recuse myself from this matter.  The case shall be assigned to another Justice.  Copy forwarded to all  attorneys of record. |
| 7/9/09 | Amended complaint for Review of Government Action Pursuant to M.R.CIV.P. 80B Filed. |
| 7/13/09 | Order issued. (Murphy, J).  upon review of the above entitled file, I must recuse myself from this matter.   The case shall be assigned to another Justice.  Copy forwarded to all attorneys of record. |
| 7/13/09 | Plaintiffs' Amended Motion for an Order Specifying the Future Course of Proceedings filed. (docketed 7/16/09) |
| 7/14/09 | Stipulated Motion to File Second Amended Complaint and Enlarge Time for Defendant to File Answer filed by Appellants. |
| 7/14/09 | Second Amended Complaint for Review of Government Action Pursuant to M.R.Civ.P. 80B filed by Appellants. |